JAMES PORTER, Plaintiff, *v.* THOMAS J. DUNN, as Surviving
Executor, etc., Defendant.

The legislation in this state upon the subject of the rights of married
women, has only changed their common-law status to the extent set
forth in the various statutes; they have not deprived the husband of his
common-law right to avail himself of a profit or benefit from the
services of his wife.

Upon a reference under the statute of a claim filed by P. with the execu-
tors of K., for services of the wife of P. as nurse, the following facts
appeared: K., who was an invalid, hired a room in P.'s house and took
his meals at his restaurant. P.'s wife, who was not engaged in any
separate business, while attending to the household duties and helping
her husband in his business, with his knowledge and consent, took
care of K. as a nurse, obtaining from her husband such sums as it was
necessary for her to expend in such services. She made no personal
claim for compensation therefor. *Held,* that P. was entitled to recover
the value of such services.

The wife was allowed to testify as to the circumstances of her engage-
ment as nurse, under an objection that such evidence was inadmissible,

she being, under the provision of the Code of Civil Procedure (§ 829), an interested party. *Held,* untenable; that plaintiff did not derive his right to recover through or under his wife, but was asserting his common-law right.

It appeared that when K. first called in the services of P.'s wife as nurse, he said he would give her $5,000 in his will; on subsequent occasions, that he would remember her in his will. He left her a legacy of $500. She attended upon K. for eleven years. The referee allowed a sum which the evidence showed the services were worth; this sum was reduced by the General Term upon the ground that the services had been rendered under an agreement on the part of K. to pay $5,000, and that this was the measure of liability. *Held,* untenable; that no such agreement was shown; and that as the finding of the referee was supported by the evidence, it could not be disturbed arbitrarily.

*Porter* v. *Dunn* (61 Hun, 310), reversed.

(Argued February 2, 1892; decided March 1, 1892.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 16, 1891, which modified and affirmed as modified a judgment, ordered in favor of plaintiff on the report of a referee appointed in a reference under the statute of a claim of James Porter against Patrick H. Kennedy deceased. The referee allowed $7,499.42 with interest from the death of Kennedy. This amount was reduced by the General Term, by deducting $3,404.28.

The facts, so far as material, are stated in the opinion.

*W. W. Westervelt* for defendant. The testimony of Mrs. Porter concerning personal transactions and communications between herself and Mr. Kennedy, the deceased, was improperly admitted by the referee against the executor. (Code Civ. Pro. §§ 828, 829.) The request was made of Mrs. Porter, individually, and the promise of, or agreement for, remuneration, was made by the deceased to Mrs. Porter, individually. (Laws of 1860, chap. 90, § 2; *Brooks* v. *Schwerin,* 54 N. Y. 343; *Birbeck* v. *Ackroyd,* 74 id. 356.) An arrangement and an agreement between the husband and wife having been shown, whereby the wife was to perform the services for the deceased for pay, and pay from the deceased, she being the

only contracting party with the deceased, the referee erred in his conclusion of law. (*Reynolds* v. *Robinson*, 64 N. Y. 589; *Burley* v. *Burnhard*, 9 N. Y. S. R. 587; *Brooks* v. *Schwerin*, 54 N. Y. 343.)

*Eugene S. Ives* for plaintiff. The services rendered belonged under the law to the husband. (*Reynolds* v. *Robinson*, 64 N. Y. 589.) The General Term erred in directing that the sum of $3,404.28 be deducted from the amount of the judgment on the ground that the evidence discloses a special agreement to render the services for the fixed sum of $5,000. (*Foote* v. *Valentine*, 14 Civ. Pro. Rep. 332; *Coogan* v. *Ockerhausen*, 23 J. & S. 289.)

GRAY, J. This proceeding was for the determination of a claim, filed by the plaintiff with the executors of the last will of Patrick H. Kennedy, deceased, for services rendered by plaintiff's wife to the testator, in the capacity of a nurse, during a certain period of time previous to his death. It being referred under the statute, by agreement, the referee reported in favor of the claimant; allowing him for the value of these services at a rate per week based upon evidence as to what such services were usually worth. Upon appeal from an order of the Special Term confirming the referee's report and from the judgment entered by the plaintiff, the General Term ordered a deduction from the amount allowed and affirmed the judgment as so modified. Both parties appealed to this court; the plaintiff because of the deduction by the General Term; the defendant because of the affirmance by the General Term of the judgment.

Upon the defendant's appeal it is argued, with respect to the claim, that it was one which belonged to the wife, by force of the statutes of this state which regulate the status and the rights of married women, and was not one which could have accrued to the plaintiff, under the circumstances disclosed. But as to this contention we agree with the General Term that, from the evidence, it is clear that the wife of the plaintiff was

acting not for herself, but in the service of and subordinate to her husband.

The deceased rented a room in the plaintiff's house and boarded in his restaurant. The plaintiff's wife, while attending to the houshold duties and helping her husband in his business, and being engaged in no occupation separate from that devolving upon her as a wife, also attended upon the deceased and cared for him as a nurse. Such services were rendered with the knowledge and assent of the husband. Moneys which were expended in and about her attendance upon the testator, were procured from the husband. Finally, she made no personal claim to be compensated for what she had done. These facts and circumstances sufficiently established the right of the husband to prefer and to maintain the claim. The legislation in this state upon the subject of the rights of married women has only resulted in abrogating their common-law status to the extent set forth in the various statutes. They have not by express provision, nor have they by implication, deprived the husband of his common-law right to avail himself of a profit or benefit from her services.

It is true she may engage in a separate occupation and labor upon her own account and retain to herself the earnings therefrom; but that was not the case here; nor is there the slightest evidence of her having elected to labor upon her own account, or to consider herself entitled to the payment for her services.

As, therefore, the husband did not derive his right to recover against the estate of the deceased, for the compensation due for the services rendered by his wife, through or under her, but was asserting his common-law right, the objection by the defendant to the reception of the testimony of the wife, as to the circumstances of her engagement as nurse, under section 829 of the Code of Civil Procedure, was untenable.

This brings us to the consideration of the plaintiff's appeal from the deduction by the General Term from the amount allowed by the referee. The modification by the General Term was stated in the order and judgment to have been made upon questions of law and fact, and we are thus authorized to exam-

ine into the evidence given upon the trial, in order to discover whether there were any facts which would warrant the appellate court in so modifying the judgment below. The result of that examination does not satisfy us that there was evidence of any agreement with the testator, which would conclude plaintiff and prevent his recovering as upon a *quantum meruit*. The facts are few and are furnished by the testimony of the wife. When the testator became a tenant of the plaintiff's, in 1877, he was suffering from consumption. Being attacked by a hemorrhage, he called in Mrs. Porter and asked her to take care of him. To quote from her testimony, " he asked me himself to nurse him. He told me to take care of him and that he would give me $5,000 in his will; he said he would give me $5,000 in his will at this time, right in the beginning, the first day." Again she testified : " I have testified that Mr. Kennedy said he would pay me in his will. He said it six or eight times. I was satisfied to wait until he died and I never thought he would do anything wrong, for he was a gentleman in every way." Upon that evidence, for that was practically all which could be considered to bear upon any arrangement with testator, the General Term deemed the services to have been rendered under an agreement on the testator's part, and that the sum of $5,000 measured his liability, or that of the estate. The evidence shows that from December 20, 1877, when the testator came to live with plaintiff, to the time of his death, on November 5, 1888, nearly eleven years, plaintiff's wife constantly attended upon him. During the lapse of that period all that appears about any compensation is that from six to ten times the testator said he would pay her, or remember her in his will. The particular sum of $5,000 seems only to have been mentioned in the beginning. When his will was read there appeared only a provision for a legacy to her of $500. This the executor paid over to her and, upon the present trial, he opposed the claim, principally on the ground, that plaintiff's wife, and not plaintiff, was the proper party to maintain it. Neither party seems to have considered that there was anything which amounted to an agreement limiting the amount of

compensation. The plaintiff supported his claim by evidence as to the value of the services rendered; while the defendant denied his legal right to recover anything and insisted that his wife had been fully paid by the legacy of $500. The difficulty in the way of sustaining the modification by the General Term upon the facts, is in the very absence of facts to support the theory, expressed in their opinion, of an agreement or obligation limiting a recovery; and there is actually no other basis for their modification if we disregard that theory.

The general facts in evidence, upon which the referee based his finding, are conflicting and would not warrant either an arbitrary deduction by the appellate court, or some other determination by it as to what amount the plaintiff should recover. This was not a case where distinct or separate items went to make up the allowance and where the court, in its judgment, might reject some of the items for error of fact or of law, and order a modification accordingly. There was but the one claim for a continuous service as nurse. As the referee was supported by the evidence in his finding as to its worth, it should not be disturbed arbitrarily. Within the reasoning of the opinion in *Whitehead* v. *Kennedy* (69 N. Y. 462, 468), I think the General Term had not the power to determine upon conflicting evidence what amount the plaintiff should recover in this case. Nor has its theory any actual support in the facts. When testator first called in the services of Mrs. Porter, as a nurse, he said he would give her $5,000 in his will; but upon the subsequent occasions he only said he would remember her in his will. So he did; but not in the sum which he had first mentioned. This would seem rather to negative any inference of an agreement, or understanding as to compensation. It may be assumed that Mrs. Porter expected to be well remembered by testator in his will; but that would not conclude the plaintiff from claiming the reasonable worth of her services. Not only was he not a party to any agreement fixing the amount to be paid for the services of his wife; but, in fact, there was no agreement which the evidence discloses. Nor is the testator's promise to remember her in his will

inconsistent with the right of the husband to claim for what her services were worth. The fact of the mention by the testator, in his first interview with Mrs. Porter, of an intention to give her $5,000 in his will, is not such a fact in relation to evidence of value, as to authorize this reduction. He may have spoken in good faith, while Mrs. Porter listened, and believed, and probably hoped; but where are the elements of an agreement, or how does the promise of a testamentary gift, not performed, operate to restrict the plaintiff's right to recover for the value of his wife's services? And how can such a promise tend to prove or affect the reasonable value of the services as thereafter rendered? I do not think that any inference can be drawn from the fact of a promised gift by will, except that of a purpose to enlist and to retain the services of the wife and the attentions of the family. If any other inference could be drawn from the facts, upon which the General Term might be supported, in their modification of the judgment, I should strongly incline to it; for I am conscious that the claim is open to very severe criticism. Brought against the estate of the deceased; allowed to run for nearly eleven years; supported by the sole testimony of the plaintiff's wife, with no admission of any payments meanwhile; these are facts which might well create an atmosphere of grave doubt about the honesty of the claim. But these were considerations for the trial court and not such as may be acted upon by us.

The order and judgment of the General Term should be reversed and the judgment entered upon the referee's report should be affirmed, with costs in this court.

All concur, except Earl, Ch. J., and O'Brien, J., dissenting and Andrews, J., not voting.

Judgment accordingly.