In the Matter of the Judicial Settlement of the Accounts of MAR-
GARET CALLISTER and Another, as Administrators of JOHN CAL-
LISTER, Deceased.

WILLIAM D. CALLISTER and Others, Appellants; MARGARET CAL-
LISTER, as Administratrix, etc., of ROBERT WALKER, Deceased,
Appellant: MARGARET CALLISTER, Respondent.

*Married woman — her contract merged by her marriage to the other party to the con-
tract — testimony as to personal transactions with a decedent — check made by an
administrator — presumption of payment — personal liability thereon.*

Where an attorney employs a woman as clerk for so long a time as he practices
law, payment not to be made until he retires from practice, and the parties are
subsequently married, the contract is merged ; the husband is after that event
entitled to her services and she cannot recover for them during the period of
the marriage relation.

Such a contract is not " property " within the meaning of chapter 200 of the
Laws of 1848, which continues her separate property after marriage.

Upon an accounting by an administratrix she presented a claim for services ren-
dered by her against the estate of the decedent, her husband. Upon the trial
a note which she held against him was produced by the administratrix at the
request of the next of kin, who offered it in evidence. To rebut the presump-
tion created by the note, as against the individual claim of the administratrix
for services rendered her husband, she was offered as a witness in her own
behalf to explain the consideration of the note and the circumstances under
which it was given, which involved her testifying to a personal transaction
with her deceased husband. The objection of the next of kin, that the evi-
dence was prohibited by section 829 of the Code of Civil Procedure, was over-
ruled, and the evidence was admitted.

*Held*, that when the note was produced and received in evidence without objection
the presumption arose that all prior obligations of the deceased to the claimant
had been discharged and settled, and the note represented the sum total of what
was due the claimant;

That testimony of the claimant tending to overthrow this presumption could only
have been given, under section 829 of the Code of Civil Procedure, when " the
testimony of the deceased person is given in evidence concerning the same
transaction;"

That the note was in no sense the testimony of the decedent, and that the next of
kin by calling for the production of the note in evidence could not be said to
have given in evidence testimony of the deceased.

Upon an accounting by one Margaret Callister, as administratrix of John Cal-
lister, the same person being also administratrix of Robert Walker, it was found
that Callister owed Walker a large sum of money

*Held,* that the fact that Margaret Callister, as administratrix of Walker, gave a small check to John Callister did not create a presumption that the check was received in discharge of the claim existing in favor of Walker's estate.

An administratrix cannot bind her intestate's estate by a check, and in its execution acts as an individual and becomes personally responsible for the amount thereof.

APPEAL by William D. Callister and others, next of kin of John Callister, deceased, from a decree of the Surrogate's Court of the county of Ontario, entered in said court on the 23d day of November, 1894, confirming, as modified by said decree, the report of a referee and directing certain payments to be made to Margaret Callister.

Also an appeal by Margaret Callister, as administratrix of the estate of Robert Walker, deceased, from so much of said decree as adjudged that the estate of John Callister is not indebted to the said Margaret Callister, administratrix of Robert Walker, deceased, and that said Margaret Callister, as such administratrix, is not entitled to recover from the estate of John Callister, deceased, the claim against said estate.

Margaret Callister is the widow of John Callister, deceased, and the daughter of Robert Walker, deceased. She is the administratrix of the estate of Walker as well as an administratrix of the estate of Callister. She married Mr. Callister in May, 1857, and he died in April, 1888. Upon the accounting before the surrogate of the estate of Callister she presented, as administratrix of Walker, a claim against the Callister estate for $2,000 for money loaned by Walker to Callister, and for thirty dollars interest received by Callister upon a mortgage belonging to Walker. She also presented an individual claim to the effect that about one year preceding her marriage with Callister (who was a practicing lawyer) she entered into a contract with him to act as copyist and clerk in his law office, for which he agreed to pay her at the rate of $500 per year, the employment to continue as long as he practiced law, payment not to be made until he retired from practice. That from the time of her contract until the time of his death she served continuously for him as such clerk and copyist, and had only received as compensation therefor the sum of five dollars, which was paid by deceased after the marriage, the decedent thereby recognizing the contract, and that Callister practiced law until the time of his death. The next of kin of John Callister

disputed these claims, and the matter was referred by the surrogate to a referee, who took proof in the course of which Mrs. Callister at the request of the next of kin produced a note for $1,200 made by her husband in her favor. The referee found in favor of Mrs. Callister, the claimant, upon this note of $1,200 and interest which she held against her husband, and found against her on her claim for services upon the ground that her contract for service was merged in her marriage, and rejected the claim in favor of the Walker estate upon the ground that Mrs. Callister, as the administratrix of Walker, had given a check for $120 to some bankers, payable to the order of John Callister, that had been indorsed by him and bore the mark of a canceling hammer. No explanation was given as to the check, its consideration or the purpose for which it was given. The next of kin required the claimant to produce before the referee the $1,200 note above referred to, and she did produce it, and the next of kin presented it in evidence as the note of Callister without objection. To rebut the presumption created by that note as against the individual claim of Mrs. Callister she was offered as a witness in her own behalf to explain the consideration of the note and the circumstance under which it was given, which involved a personal transaction with her deceased husband. The next of kin objected because it was such a transaction, and the evidence was prohibited by section 829, Code of Civil Procedure. The objection was overruled and the next of kin excepted and the evidence was received. The referee's report and the evidence accompanying it was submitted to the surrogate, and that officer sustained the finding of the referee as to the claim of the estate of Walker upon the same grounds as assumed by the referee, but rejected his conclusions as to the claim for clerical services, and decreed that the claimant should recover it, amounting, with interest, to about $22,000, and should also recover the amount of the $1,200 promissory note and interest. The referee and surrogate both found the contract between Mrs. Callister and her husband as claimed by her and above set forth, and also that the $2,000 loan had been made by Walker to Callister, upon which Callister had paid $1,000, and the thirty dollars of interest on the mortgage had been received by him, and that the real consideration of the $1,200 note was for

money which had been given the claimant by her husband, and which had been accumulated for the purpose of buying oil paintings. The next of kin appealed from the decree allowing the claim of Mrs. Callister. The administratrix of Walker appeals from that portion of the decree rejecting the claim of the Walker estate, and the two appeals were heard together.

James C. Smith, for Margaret Callister.

W. A. Sutherland, for next of kin of John Callister, deceased.

WARD, J.:

At common law the husband was absolutely entitled to the services of his wife, and to all that should be acquired by such services. During the period covered by the contract of Mrs. Callister, and her services for her husband, the enabling acts for the benefit of married women had not deprived the husband of the common-law right to his wife's services. (*Blaechinska* v. *Howard Mission*, etc., 130 N. Y. 497; *Porter* v. *Dunn*, 131 id. 314; *Hendricks* v. *Isaacs*, 117 id. 411; *Bertles* v. *Nunan*, 92 id. 160; *Whitaker* v. *Whitaker*, 52 id. 371.) In the case first cited, at page 502, where the question arose whether a married woman working for her husband on a weekly salary, as seamstress, was entitled to the salary, the court says : " The enabling statutes do not relieve a wife of the duty of rendering services to her husband. While they give her the benefit of what she earns under her own contracts by labor performed for any one, except her husband, her common-law duty to him remains, and if he promises to pay her for working for him, it is a promise to pay for that which legally belongs to him. The fact that he cannot require her to perform services for him outside of the household does not affect the question, for he could not require it at common law. Such services as she does render him, whether within or without the strict line of her duty, belong to him. If he pays her for them it is a gift. If he promises to pay her a certain sum for them it is a promise to make her a gift of that sum. She cannot enforce such a promise by a suit against him."

In the case last cited, which was an action upon a note given by the husband to the wife for services rendered by her, outside of the household and upon a farm, Judge PECKHAM, at page 371, says :

" If a wife can be said to be entitled to higher consideration or compensation because she labors in the field, instead of in her household (which I do not perceive and cannot admit), the law makes no such distinction. It never has recognized the right to compensation from her husband on account of the peculiar character of her services."

The learned counsel for the claimant (Mrs. Callister) predicates his claim to recover for her services for her husband upon chapter 200 of the Laws of 1848, section 1, which provides that " The real and personal property of any female who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues and profits thereof shall not be subject to the disposal of her husband, nor be liable for his debts, and shall continue her sole and separate property, as if she were a single female." And his contention is that the plaintiff's contract with Mr. Callister having been entered into before her marriage, was a chose in action, and, therefore, " property," and being property, was saved to her by the statute and was not merged in the marriage contract. It must be conceded that this was not an ordinary business contract concerning property. It was an extraordinary one, and one which seemed to contemplate an uninterrupted business relation during the professional life of Mr. Callister. It was in the power of these parties, at any time, to do away with or modify this contract, or form any relation which, at law, would destroy the contract. A year after this contract was made an event occurs which we assume was not in contemplation of the parties when the contract was made that so changed the relation of the parties to each other that the servant became the wife and the master the husband. This changed relation was inconsistent with the contract of exclusive service in clerical work, because at law the service of the wife belonged to the husband and took on a domestic character. The wife after marriage was not obliged to work for the husband outside of her legitimate domestic duties. He could not compel her to work on the farm or continue the clerical work in his office, nor could she demand of him a salary as clerk. She had a higher demand upon him ; he was now to support her and to supply her with all things appropriate to his means and his station in life as his wife and not as his servant. This changed relation then of necessity abrogated

the contract. If the wife chose to continue the clerical work after the marriage she must be content with the new advantages which the marriage brought to her as her compensation for that work. As we have seen by the cases cited if she chose to perform work for her husband outside of her domestic duties she cannot recover for her services of her husband although he has contracted to pay them. We are of the opinion that it was not within the contemplation of the statute of 1848 to preserve a contract of this character from the effect of the marriage. The contract was merged in the marriage and the claimant can only recover for that portion of the clerical work at the stipulated rate performed before the marriage.

It was error to admit the evidence of the claimant as to the personal transaction between herself and her husband which resulted in his executing to her the note of $1,200. The note was produced upon the reference, upon the request of the next of kin, by the claimant, and it was received in evidence without objection; when thus proved the presumption arose that all prior obligations of the deceased to the claimant had been adjusted and settled, and the note represented the sum total of what was due the claimant. As such it was most important evidence. To break the force of this presumption the claimant was sworn over the objection that her evidence was prohibited by section 829 of the Code of Civil Procedure, and she testified as to the consideration of this note, which, if credited, overthrew the presumption. The claimant could only give this testimony, under section 829, when the "testimony of the * * * deceased person is given in evidence concerning the same transaction." This had not occurred unless, as claimed by the claimant's counsel, by calling for the production of this note and its production in evidence by the administratrix the next of kin had given such testimony "in evidence." This note was in no sense the *testimony* of the deceased. If the note had been brought into court by a subpœna and the signature of the deceased proved in the ordinary way, and the note had been shown to be in the possession of the claimant, it would have established the delivery of the note and been evidence of the contract between the parties which raised the presumption referred to. The claimant could not go into the personal transactions behind the note, and out of which it arose, any more than in the case of a bond, a mortgage or any

other written agreement between the parties. The production of this note by the claimant and the admission of the signature of the deceased, or allowing it to be read in evidence without the proof of signature, was simply a waiver on the part of the claimant of the proof of the signature and of the delivery of the note to her which otherwise the next of kin would have been compelled to establish. If this ruling is sustained then in all cases the evidence created by a writing between the living and the dead may be overthrown by the evidence of the living as to the transaction out of·which the writing was created, while the lips of the other party to the transaction are closed, thus defeating the wise purpose of section 829. The question is asked in some of the cases what the Code means by the "testimony and evidence" of the deceased? This provision was probably incorporated in section 829 to meet a condition which appeared in *Potts* v. *Mayer* (86 N. Y. 302), where the evidence of a deceased person that had been given upon a former trial of the same action was read in evidence; the living party to the transaction was permitted to testify as to the same transaction which the court sanctioned in that case.

The surrogate having found as a fact the loan of the $2,000 from Walker to Callister, and the receipt by Callister of the interest money upon Walker's mortgage, and that there had been paid upon this loan $1,000, the balance unpaid and interest is a valid charge against the estate of Callister, unless the next of kin are right in their contention that the check of $120 given by Mrs. Callister as administratrix of Walker to John Callister created a presumption that destroyed this claim. Had Mrs. Callister given her individual check it would not be claimed that such check would have had the effect stated. The presumption is only created, if at all, by the fact that she signed it as administratrix of Walker. It is well settled that an administrator cannot bind an estate by executing a note, check or other negotiable instrument as administrator. If he assumes to do so it is his individual act, and he is personally responsible. (*Buckland* v. *Gallup*, 40 Hun, 61; *Bingham* v. *The Marine National Bank of New York et al.*, 41 id. 377; *Del., Lack. & Western R. R. Co.* v. *Gilbert*, 44 id. 201; *Thompson* v. *Whitmarsh*, 100 N. Y. 35; *Schmittler* v. *Simon*, 101 id. 554.) The rejection by the surrogate of this claim was error.

The decree of the surrogate should be reversed and the proceedings remitted to the Surrogate's Court of Ontario county to proceed there, with costs to all the parties to this appeal to be paid out of the estate of John Callister.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

The decree of the Surrogate's Court of Ontario county reversed and the proceedings remitted to that court, with costs of this appeal to all parties to this appeal, payable out of the estate of the decedent.