the cause which led to the contract ceased and the consideration upon which it rested disappeared. *Zimmer* v. *Settle*, 124 N. Y. 37.

It must be assumed that when the parties rescinded the agreement of separation and resumed their marital relations all rights of one against the other, either in law or equity, were adjusted and settled. It follows, therefore, that Mary Smith, now O'Brien, widow of Peter Smith, is entitled to her distributive share of his estate to which she would be entitled if no agreement had ever been entered into.

The objections to the account taken by the widow to the payments on account of the cemetery plot do not seem to be well taken. They were debts incurred by the decedent in his lifetime, and no evidence has been offered sufficient to challenge the good faith of the administrator in their payment.

The burden was on the contestant to show that the debts did not exist, and that they were not paid in good faith, and the contestant having failed in this, the objections are overruled.

Decreed accordingly.

----

Matter of the Estate of CANDACE MALLORY, Deceased.

(Surrogate's Court — Cattaraugus County, July, 1895.)

An agreement by one who has been living with and paying board to a sister and who feels unable to continue to do so, in consideration of future support and maintenance, that such sister shall have whatever may be left at her death, is valid and enforcible against her estate.

In such a case, as the parties have definitely fixed the amount of compensation, the claimant is entitled to retain the entire residuum without proof of the extent or value of such maintenance.

The Married Woman's Acts do not affect the right of a husband to recover for services performed by his wife.

The rule that a claim withheld during the lifetime of the alleged debtor and sought to be enforced against his estate should be carefully scrutinized and allowed only on clear and satisfactory proof has no application to a case where, by the terms of the contract, no right of action was to exist until the death of the debtor.

PROCEEDINGS on judicial settlement and proof of personal claim.

*Geo. E. Spring* and *W. G. Laidlaw*, for administrators.

*J. H. Waring* and *W. W. Waring*, for contestants.

DAVIE, S.   Candace Mallory died intestate December 15, 1893, leaving an estate of about $500 after payment of debts and expenses of administration.   On the 11th of January, 1894, letters of administration upon her estate were issued to Samuel W. Hoag and Mary L. Hoag, his wife, who was a sister of the deceased.

Deceased never married, and for many years prior to her death resided with the family of the administrators, a portion of the time boarding with the family, occupying rooms in the house of Mr. Hoag, and at times boarding herself; she was a seamstress by trade and occasionally was employed away from home; her income was very limited and her entire estate was personal, the most of which she derived upon the distribution of her father's estate; she had several brothers and sisters, but was not on intimate terms with any of them except Mrs. Hoag.

The administrator, Samuel W. Hoag, presents a claim against the estate of deceased for her support and maintenance, the validity of which is controverted by the next of kin or their assignees.

It is urged on the part of the contestants, that the relations existing between the deceased and the claimant were of such a character that such support and maintenance as he provided for her must be presumed to have been provided gratuitously; that the claim cannot be maintained without satisfactory proof of a positive agreement on the part of the deceased to make compensation, and that the claimant's case fails to meet this requirement.

Ordinarily, where one receives the beneficial services of another, the law implies a promise to pay what such services are reasonably worth in the absence of an agreement for com-

pensation, but it is undoubtedly true that such presumption may be entirely overcome by the circumstances of a particular case. The legal presumption of an obligation to pay is very weak where the services rendered are of such a character that, from the relations existing between the parties, they evidently were prompted by motives of affection and reciprocal obligations. If the circumstances are such as to lead to the conclusion that the services were rendered gratuitously, the law will not imply an obligation to pay. It has been distinctly held that, however valuable the services, one cannot render them with a tacit understanding that no pecuniary charge was to be made therefor and afterwards recover upon the *quantum meruit*. *Moore* v. *Moore*, 3 Abb. Ct. App. Dec. 303 ; *Williams* v. *Hutchinson*, 3 N. Y. 312 ; *Ross* v. *Ross*, 6 Hun, 182.

It is quite apparent that the claimant is not entitled to recover anything in consequence of any services or maintenance prior to the year 1882 ; such claim is fully barred by the Statute of Limitations. Moreover, Mrs. Hoag testified, upon her cross-examination, that prior to that date they were maintaining the deceased without compensation. Although the deceased had on various occasions expressed a desire to compensate her sister and husband for what they had done for her, the first distinct negotiations relative to compensation took place in 1882. The evidence bearing upon this question comes from the claimant's wife ; she was a competent witness, and not to any extent disqualified by the provisions of section 829 of the Code of Civil Procedure. *Porter* v. *Dunn*, 131 N. Y. 314.

This witness testified : " I said that we could not keep her as we had before ; she said she was willing to pay, and I asked her how much ; she said she was willing to pay a dollar a week besides what she did ; I said that was all right, I was satisfied if she was ; my husband was present when this conversation took place ; before that she had said if she ever had anything and could pay us for what we were doing for her she wanted to pay us."

Surrogate's Court, Cattaraugus County, July, 1895.   [Vol. 13.

This arrangement continued during the years 1882 and 1883, the deceased in the meantime paying the stipulated price of one dollar per week.

In the year 1884 another conversation took place between the parties, concerning which Mrs. Hoag testified as follows: "She" (the deceased) "said she didn't think she could pay as she had been paying the two years back, but if she had anything at her death she wanted we should have it; we said if we could have it, so we could get our pay if she had anything left at her death, it was all right and we were satisfied; she could have the use of it while she lived; she wanted to stay; she thought she couldn't pay as she had been paying, but if she had anything left at her death, and we were living, she wanted we should have it; then Mr. Hoag said she could have the rooms and stay with us when she wished, and when she didn't she could stay in her own rooms."

The evidence of Mrs. Hoag is corroborated to some extent by that of the witness McNall; he was a cousin of the deceased, and testified to having had a conversation with her in 1893, in which she said that "there was an arrangement between her, Sam and Mary; that the arrangement was, that if she died before Mary did, Mary was to have what was left of her property; she said that she had some money; that she had talked with them about giving her a home, and that she calculated that Mary should have whatever she left."

The contestants call attention with much earnestness to certain circumstances disclosed by the evidence, and to declarations alleged to have been made by the claimant, inconsistent to some extent with an understanding on his part that he was to be compensated for what he had done for the deceased; yet the evidence of Mrs. Hoag is entirely uncontradicted; it is entitled to credit; we are not at liberty to disregard it; it establishes the fact, beyond question, that the conversation detailed by her actually took place in 1884.    What, then, is its legal effect?

If the deceased, in declaring that Mrs. Hoag should have whatever estate she might possess at the time of her death.

simply designed to express an intention of making a testamentary disposition of her property beneficial to Mrs. Hoag, a mere voluntary declaration, or even a recognition of a moral obligation, it is not sufficient to vest title to the residuum of the estate in either Mr. or Mrs. Hoag. An action cannot be predicated upon a contract that rests in intention solely. Even if Mr. and Mrs. Hoag were induced in consequence of these declarations to expect or to hope that the deceased would make a disposition of her property at her death favorable to them it is not enough. *Collyer* v. *Collyer*, 113 N. Y. 449. The transaction must have a wider scope and possess all the elements of a contract.

In view of the fact that for two years prior to the conversation of 1884 the deceased had been making a certain stated compensation for her maintenance, it can hardly be claimed that after that time it was the design or understanding of either party that such maintenance should be continued gratuitously. The only purpose of that conversation was to modify the terms of the agreement entered into in 1882. The deceased distinctly stated to Mr. and Mrs. Hoag that if they would furnish her a home during the balance of her life they should have as a compensation therefor whatever property might belong to the deceased at the date of her death. This offer was accepted by Mr. Hoag. He undertook, upon his part, to furnish such maintenance as the deceased might require. This makes a complete contract, an agreement to render services on the one part and an agreement to make compensation on the other. Assume, for the sake of argument, that the estate of the deceased, at the date of the conversation in 1884, had consisted entirely of a mortgage for $500, and she had said to Mr. Hoag that if he would furnish her a home during her life that at her death he should have such mortgage, the validity of such an arrangement has been recognized and upheld. *Gescheidt* v. *Drier*, 44 N. Y. St. Repr. 481.

The terms of the agreement in the case at bar are equally as definite and certain as in the case cited. The parties evi-

Surrogate's Court, Cattaraugus County, July, 1895.   [Vol. 13.

dently had a full appreciation of the scope and extent of the
agreement.    The deceased had resided with the claimant so
long a time that he was fully apprised as to the probable
expense of her future maintenance.    He also understood the
nature and extent of her estate, as well as the possibilities of
its being increased or diminished.    Under all the circumstances
it was entirely competent and proper for the parties to make
an agreement of the character claimed to have been made;
and from a careful consideration of all the evidence in the
case I am of the opinion that the parties designed and intended
by the conversation in 1884 to enter into an agreement to the
effect that Mr. and Mrs. Hoag should furnish the decedent a
home during life, and as compensation therefor they should
have whatever estate might belong to decedent at her death;
that both parties thereafter acted upon the belief and under-
standing that a valid contract was existing between them to
that effect.    Mr. Hoag has fully performed this contract on
his part and he is entitled to recover thereon.

The right to recover in this case belongs' to the husband
and not to the wife.    The fact that the conversation regard-
ing compensation took place between the deceased and the
wife, and that the promise of the deceased was to the effect
that Mary, or Mary and her husband, should have what prop-
erty she left, does not change the situation.    In the case of
*Porter* v. *Dunn*, above cited, the arrangement for compensa-
tion was to the effect that the testator should make the wife
of the plaintiff a legatee under his will to the extent of $5,000,
yet the court held that the right of action to recover for the
wife's services belonged to the husband.    Whatever services
were rendered to the decedent by Mrs. Hoag were performed
in the household of her husband.    Such privileges and
advantages as the deceased contracted for were to be received
by her in the family of the claimant.    Mrs. Hoag had no
separate business or interests of her own, and the expense of
the maintenance of the deceased was sustained by Mr. Hoag.
It is entirely apparent that whatever part Mrs. Hoag took in
the negotiations for compensation she was acting not for her-

self, but for and subordinate to her husband.   The legislation of this state relative to the rights of married women has only changed their common-law status to the extent set forth in the various statutes.   They have not deprived the husband of his common-law right to avail himself of a profit or benefit from the services of the wife.   *Reynolds* v. *Robinson*, 64 N. Y. 589; *Coleman* v. *Burr*, 93 id. 17; *Porter* v. *Dunn*, *supra; Stamp* v. *Franklin*, 144 N. Y. 607.

Having determined that the services in this case were rendered under an express agreement for compensation, it remains to be ascertained what the measure of such compensation is; whether the claimant is entitled to retain the entire residuum without regard to the value of his services or whether he must recover upon the *quantum meruit.*   The principle is elementary that in these cases, where the parties by the terms of their contract have fixed the measure of damages or agreed upon a method of determining the same, such agreement is controling.   In this case the parties have agreed that the measure of compensation should be the estate left by deceased.   The evidence showing, as it does, that the claimant continued to maintain the deceased to the extent desired by her during her life, I am of the opinion that he is entitled to retain the entire residuum without proof of the extent or value of such maintenance.   In the case of *Porter* v. *Dunn, supra,* the testator having failed to provide the wife with the $5,000 legacy, an action was brought against the executor to recover the value of the wife's services, and a judgment was obtained therein to the amount of $7,599.52.   On appeal the General Term directed a modification of the judgment by reducing the recovery to $5,000, upon the theory that the parties by their agreement had fixed that sum as the measure of compensation, but on appeal to the Court of Appeals the order and judgment of the General Term were reversed and the original judgment entered upon the report of the referee affirmed, the court saying: " The difficulty in the way of sustaining the modification by the General Term upon the facts is in the very absence of facts to support the theory expressed in their opin-

ion of an agreement or obligation limiting a recovery." See p. 319 The distinction between the cases cited and the one at bar is that in the former the parties by their agreement had failed to establish a measure of damages, for, as the court says, "neither party seems to have considered that there was anything which amounted to an agreement limiting the amount of compensation" (p. 318), but in this case the parties have distinctly fixed the amount of compensation, not, it is true, in dollars and cents, not a certain amount by the week or month, but the property which deceased might possess at the time of her death.

But if it is insisted that the claimant can recover only upon the *quantum meruit*, then, even, the claim is satisfactorily established by the evidence. Mrs. Hoag testified with a considerable degree of particularity in regard to the portion of time that deceased took her meals with the family, and as to the necessaries furnished to her at such times as she boarded herself, she says that during the time intervening between the conversation of 1884 and the death of the deceased she would take her meals with the family for six weeks at a time and at other times three or four days, and would then furnish her own meals for a time. Mrs. Hoag testified that she had been a married woman twenty-eight years and had kept house and had the management of the household matters; that she knew the value of board and that the accommodations furnished to the deceased were worth one dollar per week. Other witnesses who were inmates of the claimant's household for considerable periods of time prior to the death of deceased, and who knew the nature of the privileges accorded to the deceased, testified that her board was worth two dollars and fifty cents per week. Mrs. Hoag's estimate covers the entire period, whether the deceased was taking her meals with the family or boarding herself; that is, a dollar a week on the average for the entire time. The estimate of the other witness at two dollars and fifty cents was for steady board by the week. From the conversation in 1884 to the beginning of the final illness of the deceased, 503 weeks, her last sickness

continued three weeks.   Mr. Hoag and wife nursed and cared for her during that time and their service in so doing was worth two dollars per day, making the aggregate of the claim for entire time of $545, a sum greater than the residuum of the estate.

It is undoubtedly true that claims withheld during the lifetime of the alleged debtor and sought to be enforced against his estate should be carefully scrutinized and allowed only upon clear and satisfactory proof.   *Kearney* v. *McKeon*, 85 N. Y. 139.   But this principle from its very nature can have no application to a case where, by the terms of the agreement between the parties, no right of action exists until the death of the debtor.   Mr. Hoag was not in a situation to demand compensation from the deceased during her lifetime ; that was not the agreement or understanding between them.   I am convinced that the claimant's right to retain the entire residue of this estate is fully established by the evidence, and, accordingly, the decree entered will direct the administrators, after the payment of commissions and the expenses of the accounting, to pay whatever balance may remain to the claimant, Samuel W. Hoag, in satisfaction of his claim against the estate of the deceased.

Ordered accordingly.