In the Matter of the Judicial Settlement of the Accounts of MARGARET CALLISTER and HENRY LIKLY, as Administrators of JOHN CALLISTER, Deceased.

MARGARET CALLISTER, Individually, Appellant; MARY RAD-CLIFFE et al., Respondents and Appellants; MARGARET CALLISTER, as Administratrix of ROBERT WALKER, Deceased, Respondent.

1. CONTRACT FOR WOMAN'S SERVICES — EFFECT OF MARRIAGE. Where an attorney employs a woman as clerk for so long a time as he practices law, payment not to be made until he retires from practice, and the parties are subsequently married, the contract is merged; the husband, after that event, is entitled to her services and she cannot recover for such as are rendered during the period of the married relation — except as permitted by L. 1892, ch. 594; L. 1896, ch. 272.

2. MARRIED WOMEN'S ACT OF 1848. Such a contract is not "property" within the meaning of the Married Women's Act of 1848 (Ch. 200), which continues the woman's separate property after marriage.

3. MARRIED WOMEN'S ACT OF 1848. The Married Women's Act of 1848 does not save from extinguishment by marriage of the parties, a contract relating solely to personal services to be rendered by the woman for the man, for a consideration named.

4. TESTIMONY OF DECEASED PERSON — CODE CIV. PRO. § 829. By the word "testimony," in section 829 of the Code of Civil Procedure, which prohibits an interested survivor from testifying in his own behalf as to a personal transaction or communication between himself and a deceased person, except where "the testimony of the deceased person is given in evidence concerning the same transaction or communication," is meant sworn statements of the deceased made on some prior occasion.

5. PROMISSORY NOTE OF DECEASED PERSON — CODE CIV. PRO. § 829. It is not intended by section 829 of the Code of Civil Procedure that when a promissory note or other instrument executed by a deceased person is

read in evidence by those who represent him, the living party to the document can testify to whatever was said and done when it was executed. Such a document may be "evidence," but it is not "testimony."

6. PROMISSORY NOTE OF DECEASED PERSON — CODE CIV. PRO. § 829. Upon an accounting by an administratrix she presented a claim for services rendered by her, against the estate of the decedent, her husband. Upon the trial, a note which she held against him was produced by the administratrix at the request of the next of kin, who offered it in evidence, and it was received, under the objection and exception of the administratrix. To rebut the presumption created by the note, as against the individual claims of the administratrix for services rendered her husband and for moneys received by him from and for her prior to the giving of the note, she was offered as a witness in her own behalf to explain the consideration of the note and the circumstances under which it was given, which involved her testifying to a personal transaction with her deceased husband. The objection of the next of kin, that the evidence was prohibited by section 829 of the Code of Civil Procedure, was overruled and the evidence was admitted. *Held,* that the testimony of the claimant was erroneously received, and the finding predicated upon it that "the note in no way related to or affected the other dealings" between the parties, had no foundation to rest upon; that without that finding the presumption would be that the giving of the note was *prima facie* evidence of an accounting and settlement of all demands between the parties due at the date of the note; and that the ground upon which the admission of the evidence tending to repel this presumption is sought to be defended, to wit, that when the note was put in evidence by the next of kin it became the "testimony of the deceased person," within the meaning of the statute, is untenable.

*Matter of Callister*, 88 Hun, 87, modified.

(Argued May 7, 1897; decided June 8, 1897.)

APPEAL by Margaret Callister, widow of decedent, from so much of a judgment of the General Term of the Supreme Court in the fifth judicial department, entered December 11, 1895, as reversed that part of the decree of the Surrogate's Court of Ontario county which adjudged that she was entitled to recover, individually, a certain sum of money from the estate of John Callister, deceased.

Also, an appeal by Mary Radcliffe and others, next of kin of decedent, from so much of the judgment of said General Term as reversed that part of the decree of the Surrogate's Court which adjudged that Margaret Callister, as administra-

trix of Robert Walker, deceased, was not entitled to recover her claim as such against the estate of John Callister, deceased.

Margaret Callister, individually and as administratrix of Robert Walker, deceased, filed claims against the estate of John Callister, deceased, which were objected to by the next of kin. A reference was thereupon made to hear and determine, subject to confirmation by the surrogate, all questions respecting said claims, and to report the evidence with his opinion. The referee having reported accordingly, his findings of fact were adopted, and all of his conclusions of law, with one exception, were confirmed by the surrogate. An appeal was taken by Margaret Callister, as administratrix, to the General Term from so much of the decree of the surrogate as adjudged that the estate of said John Callister was not indebted to her, as such administratrix, in any amount whatever. Mary Radcliffe and others, as next of kin, appealed from so much of said decree as directed payment of certain sums of money to Margaret Callister, individually, from the estate of said John Callister. The decision of the General Term was "That each portion of the said decree so appealed from be, and the same hereby is, in all things reversed on questions of law, and that the proceedings herein be, and they hereby are, remitted to the said Surrogate's Court for action upon the report of said referee."

Further facts are stated in the opinion.

*James C. Smith* for Margaret Callister, individually, and as administratrix of Robert Walker, deceased. The judgment is appealable to this court. (*Stimson* v. *Vroman,* 99 N. Y. 74; *Produce Bank* v. *Morton,* 67 N. Y. 199; *Moulton* v. *Cornish,* 138 N. Y. 133.) The claimant is entitled to recover from the estate the amount due for the services rendered by her as a clerk or copyist under the contract made between her and the intestate before their marriage. (L. 1848, ch. 200; *Power* v. *Lester,* 23 N. Y. 527; *In re Bronson,* 150 N. Y. 5; *Dygert* v. *Remerschnider,* 32 N. Y. 629.) An intended

husband may, by valid agreement made prior to or concurrently with marriage, relinquish or waive his right to the services of his intended wife, except so far as considerations of public policy prevent.  Neither common law nor statute stands in the way.  (*In re N. Y., L. & W. R. R. Co.*, 98 N. Y. 447; *Foley* v. *Royal Arcanum*, 151 N. Y. 196; *Brady* v. *Nally*, 151 N. Y. 258; L. 1860, ch. 90, §§ 1, 2; *Nash* v. *Mitchell*, 71 N. Y. 199; L. 1896, ch. 272, § 21; L. 1884, ch. 381; L. 1892, ch. 594.)  Independently of the statutes of 1848 and 1849 the claimant is entitled to the agreed compensation for her services, upon well-established principles of equity. (*Shepard* v. *Shepard*, 7 Johns. Ch. 57; Story's Eq. Juris. §§ 1368–1376; *Hendricks* v. *Isaacs*, 117 N. Y. 411; *Savage* v. *O'Neil*, 44 N. Y. 298; *Woodworth* v. *Sweet*, 51 N. Y. 8.) Should it be contended by the contestants that the agreement is one which by its terms was not to be performed within a year, and, therefore, was void, it not being in writing, the position is untenable.  (2 R. S. 135, § 2, subd. 1; *Dresser* v. *Dresser*, 35 Barb. 573; *Blake* v. *Voigt*, 134 N. Y. 69.)  The admission of the testimony of the claimant concerning the real consideration of the promissory note given to her by the intestate and put in evidence by the contestants was not error.  (*Sherman* v. *McIntyre*, 7 Hun, 592; *Davis* v. *Gallagher*, 55 Hun, 593; 124 N. Y. 487; 85 N. Y. 641; *Smith* v. *Christopher*, 3 Hun, 585; *Marsh* v. *Brown*, 18 Hun, 319; *Wadsworth* v. *Heermans*, 85 N. Y. 639; *Holcomb* v. *Holcomb*, 95 N. Y. 316; *Clift* v. *Moses*, 112 N. Y. 426; *Heyne* v. *Doerfler*, 124 N. Y. 505; *Potts* v. *Mayer*, 86 N. Y. 302; *In re Scheuer*, 5 Dem. 370; *Merritt* v. *Campbell*, 79 N. Y. 625.)  The judgment of the Supreme Court reversing so much of the decree of the surrogate as rejected the claim of Mrs. Callister, as the administratrix of, etc., of Robert Walker, deceased, should be affirmed, and the claim should be allowed, with costs to her as such administratrix.  (*Austin* v. *Munro*, 47 N. Y. 360; *Schmittler* v. *Simon*, 101 N. Y. 554; *C. Nat. Bank* v. *Clark*, 139 N. Y. 307; *F. Nat. Bank* v. *Wallis*, 150 N. Y. 455; *Thompson*

v. *Whitmarsh*, 100 N. Y. 35 ; *Buckland* v. *Gallup*, 40 Hun, 61 ; *Bingham* v. *M. Nat. Bank*, 41 Hun, 377 ; *D., L. & W. R. R. Co.* v. *Gilbert*, 44 Hun, 201.)

*W. A. Sutherland* for next of kin. Under the statutes, these claims can only be passed upon by the surrogate and upon the final accounting of the administrators. The decision thereof, therefore, constitutes part of the final decree, and it is conceded that the judgment of the General Term is properly brought into this court by an appeal. (*Stimson* v. *Vroman*, 99 N. Y. 74.) The claim of Margaret Callister for services cannot stand, and the surrogate was properly reversed by the General Term as to this item. (*Blaechinska* v. *H. M. Home*, 130 N. Y. 497 ; *Hendricks* v. *Isaacs*, 117 N. Y. 411 ; *Porter* v. *Dunn*, 131 N. Y. 314 ; *Whitaker* v. *Whitaker*, 52 N. Y. 368 ; Tyler on Infancy [2d ed.], 314 ; L. 1848, ch. 200, § 1.) All the transactions between the decedent and his wife were settled and adjusted by the giving of a note to the claimant by the decedent, January 1, 1884, for the sum of $1,200 ; and the testimony of the claimant, by which she attempted to avoid the legal effect of this note, was incompetent under section 829 of the Code. (*Lake* v. *Tysen*, 6 N. Y. 461 ; *Nay* v. *Curley*, 113 N. Y. 575 ; *Koehler* v. *Adler*, 78 N. Y. 287 ; *Poucher* v. *Scott*, 98 N. Y. 422 ; *Manchester* v. *Braedner*, 107 N. Y. 346 ; *Eighmie* v. *Strong*, 49 Hun, 16 ; *Black* v. *White*, 10 J. & S. 446 ; *Proctor* v. *Thompson*, 13 Abb. [N. C.] 352 ; *Richmond* v. *Richmond*, 3 Alb. L. J. 252 ; *Simmons* v. *Havens*, 101 N. Y. 433.) In the absence of explanation the presumption arising from the delivery of a check is that it was delivered in payment of a debt, and not as a loan. (*Nay* v. *Curley*, 113 N. Y. 575 ; *Koehler* v. *Adler*, 78 N. Y. 287 ; *Poucher* v. *Scott*, 98 N. Y. 422 ; *Manchester* v. *Braedner*, 107 N. Y. 346 ; *Eighmie* v. *Strong*, 49 Hun, 16 ; *Black* v. *White*, 10 J. & S. 446 ; *Proctor* v. *Thompson*, 13 Abb. [N. C.] 352 ; *Richmond* v. *Richmond*, 3 Alb. L. J. 252.) It was the duty of the administratrix of Robert Walker to pay the debts owing by his estate,

and in the absence of evidence it cannot be argued, much less presumed, that the check in question was given for any other purpose. (*Church* v. *Howard*, 79 N. Y. 415; *Hill* v. *Buckminister*, 5 Pick. 391; *Cobb* v. *Lunt*, 4 Greenl. 503, 507; *Emerson* v. *Thompson*, 16 Mass. 429–431; *Matoon* v. *Clapp*, 8 Ohio, 248; *Helm* v. *Steele*, 3 Humph. 72; *Dobyns* v. *Dana*, 4 Dana, 220.)

VANN, J.   On the 8th of September, 1888, John Callister, a resident of Ontario county, died intestate, leaving a widow, Margaret Callister, since appointed his administratrix, and certain collateral relatives, who were his next of kin.   The value of his personal estate was about $100,000 and his real estate was worth nearly as much more.   The appeal brought by Mrs. Callister, individually, involves several distinct and independent claims for money that she alleges was due to her from her husband at the time of his decease.   Those claims, so far as it is necessary to now consider them, and the facts relating thereto as found by the surrogate, are as follows :

1. "Said intestate and said Margaret Callister intermarried on the 6th day of May, 1857, and lived together as husband and wife until his death.   At some time and about one year preceding such marriage, the intestate, who was a practicing lawyer, employed Margaret Callister, then unmarried, as a copyist or clerk in his office, and agreed to pay her therefor at the rate of five hundred dollars a year, the employment to continue as long as he practiced law, payment not to be made until he retired from practice; and the intestate practiced law until the time of his death.   The rendition of services under such agreement commenced one year prior to such marriage and continued to the time of the death of the intestate, and after such marriage he recognized his agreement to pay for such services by verbal statements and the entry of an item in one of his account books under date of October 23, 1862.   On the said 23d day of October, 1862, the intestate paid to said Margaret Callister, on account of such services, the sum of five dollars, and never paid her any other sum on account

thereof." The referee rejected all of the claim presented under this contract, except the sum of $495, with interest thereon from August 23, 1888, but the surrogate allowed the entire claim, amounting, with interest, to $22,197.43, while the General Term allowed no part thereof, not even for the services rendered before marriage.

Said contract, however extraordinary and improbable it may appear, must, for the purpose of this appeal, be accepted as found by the surrogate, because the evidence is not printed in the appeal book, and both parties rely upon the findings as made. At the date of the contract but slight advance had been made in legislation toward relieving married women from the harsh features of the common law with reference to the ownership of personal property and the control of real estate belonging to them at the time of marriage. Only the pioneer act of 1848, as amended in 1849, was then in force, which provided that the real and personal property of any woman marrying thereafter and the rents, issues and profits thereof, should not be subject to the disposal of her husband, nor be liable for his debts, but should continue her sole and separate property as if she were single. (L. 1848, ch. 200, § 1 ; L. 1849, ch. 375.) By subsequent sections the property of women, then married, was in like manner secured, and the right to take by inheritance, gift, grant, devise or bequest from any person except the husband, was conferred. (Id. §§ 2 and 3.) The great enabling act of 1860, however, had not been passed, and the right of a married woman to acquire property by her trade, business, labor or services, carried on or performed on her sole and separate account, did not exist. (L. 1860, ch. 90 ; L. 1862, ch. 172.) While she could hold her property after marriage the same as before, and could take by gift or grant from others than her husband, notwithstanding her marriage, she could not create property by going into business and was not entitled to her own earnings, even for services rendered on her own account. Such was the law when the contract under consideration was made between Margaret Walker and John Callister. That contract was, of

course, valid in all respects until the intermarriage of the parties thereto, but from that time forward and by virtue thereof, the husband became absolutely entitled to the services of his wife without paying for the same. (*Blaechinska* v. *Howard Mission & Home*, 130 N. Y. 497; *Coleman* v. *Burr*, 93 N. Y. 17; *Birkbeck* v. *Ackroyd*, 74 N. Y. 356; *Reynolds* v. *Robinson*, 64 N. Y. 589; *Whitaker* v. *Whitaker*, 52 N. Y. 368; Bishop on Married Women, § 472; 9 Am. & Eng. Encyc. of Law, 817; Tyler on Infancy & Coverture, 314.) By entering into the marriage contract she impliedly agreed to render services for her husband without payment therefor, and, while she was not obliged to serve as a clerk in his office, if she did so voluntarily she could not enforce any promise of payment, however solemnly made. (*Blaechinska Case, supra*, p. 502.) The right of the husband to his wife's services was an essential part of that contract, the same as his obligation to support her. As was said by this court in *Porter* v. *Dunn*, decided in March, 1892 (131 N. Y. 314, 317), "the legislation in this state upon the subject of the rights of married women has only resulted in abrogating their common-law status to the extent set forth in the various statutes. They have not by express provision, nor have they by implication, deprived the husband of his common-law right to avail himself of a profit or benefit from her services." The contract made before marriage to perform services for compensation and the contract made by marriage to perform services without compensation could not both exist at the same time. There was a pervading and irreconcilable conflict between them, and hence the presumption of law is that the later contract so modified the earlier as to abrogate or supersede it. While there may be ante-nuptial contracts, made in view of marriage and to be enforced thereafter, there can be no modified or conditional marriage contract, whereby the services of the wife are excepted from the usual effect of marriage. Necessarily all marriage contracts are alike in their legal operation, which cannot be changed by agreement nor modified in any way except by legislation. Hence, the marriage contract between

Mr. and Mrs. Callister could not be made, and, from its nature, could not exist without destroying the previous contract for clerical services, which, in the absence of an express finding, we must assume was not made in contemplation of marriage. The facts found do not permit the inference that he intended by the agreement of 1856 to waive his common-law right to her services if he should subsequently marry her, for there is nothing to indicate that they then contemplated marriage. The contract, as found, is presumed to embrace all the stipulations of the parties, and its failure to state, directly or indirectly, that it was made in view of marriage, and the absence of any fact·indicating that marriage had then been thought of, excludes the subject of waiver from consideration. What took place after marriage by way of ratification, performance or partial payment, could not change the obligation assumed by either party when they intermarried. It was not until after the death of Mr. Callister that there was legislation which would enable a husband to make a valid and enforceable promise to his wife to pay her for her personal services, rendered apart from a separate business. (L. 1892, ch. 594; L. 1896, ch. 272; *Hendricks* v. *Isaacs*, 117 N. Y. 411, 419.)

The learned counsel for Mrs. Callister founds his argument in support of her claim upon the theory that as her contract was a chose in action, and hence property, protected by the act of 1848, it survived the marriage ceremony, and was enforceable thereafter the same as it was before. That would perhaps be true if the contract were not incapable of performance after marriage, because it would violate the theory of absolute unity of husband and wife. A man cannot be entitled to the services of his wife for nothing by virtue of a uniform and unchangeable marriage contract, and at the same time be under obligation to pay her for those services by virtue of a contract made before marriage. She cannot be his wife and his hired servant at the same time, in the absence of legislation permitting her to contract with him for her services. That would be inconsistent with the marriage relation and

disturb the reciprocal duties of the parties. The earlier contract, which is subject to change at will, must yield to the later, which the law makes final and unalterable. Certain cases are relied upon by counsel which hold that contracts made between husband and wife before marriage were not, after the act of 1848, extinguished by their matrimonial union as they had been previously at common law. (*Power* v. *Lester*, 23 N. Y. 527; *Dygert* v. *Remerschnider*, 32 N. Y. 629.) It is undoubtedly true that a contract made between a man and a woman before they were married, relating solely to property and not to services springing from the marital relation, would not be extinguished by their marriage after the passage of said act. There is no reason why any ante-marriage agreement, that is not inconsistent with the marriage contract, should not survive the latter when the legislature had declared that the property of any woman marrying after a certain date should continue her sole and separate property as if she were single. As to such a contract the wife might well be regarded as a *feme sole* in the performance of the agreement as well as in the making of it. Where, however, the contract related solely to personal services to be rendered by the woman for the man for a consideration named, and she subsequently agreed either expressly or impliedly to render those services for nothing, the later agreement necessarily supplanted the earlier because both could not exist at the same time. It was an implied part of the marriage contract between Mr. and Mrs. Callister that her services should belong to him without other compensation than support, maintenance and the discharge of other obligations arising from the marital relation. As the common law, in force at the time, made this a part of that contract, beyond the power of the parties to change or modify it, he became entitled to her services, precisely the same as if no contract had been made between them before marriage. The prior contract ceased to exist by operation of law, except in so far as it had been performed at the date of the marriage. This would entitle Mrs. Callister to recover the contract price for only one year, less the amount paid thereon during the life-

time of her husband, unless she is precluded by the presumption of a settlement arising from the giving of a note by her to her husband on the first of January, 1884, which will be considered hereafter.

2. The facts in relation to the second claim of Mrs. Callister were found by the surrogate as follows :

"As depository of his said wife in her individual capacity, the intestate received from and for her moneys, the amount so held by him at the time of his death being $2,686.93. The various items making up said last-mentioned amount are as follows: 1859, March 23, $2,267; March 23, $26.67; April 22, $2; Oct. 27, $31.47; 1861, Nov. 29, $2; 1862, July 10, $4; Oct. 28, $4; 1886, Feb. 25, $162.25; 1887, Oct. 17, $21; 1887, $40; 1887, Jan. 3, $1.37; 1888, Jan. 31, $50; 1888, May 17, $75.17. Total, $2,686.93."

This claim was allowed by the referee and the surrogate, but was reversed by the General Term, no reason being given for reaching that conclusion.

As to the items that accrued prior to the giving of said promissory note on the first of January, 1884, there may be no right of recovery, owing to the presumption of an accounting and settlement, in the absence of explanation, but as to the rest, Mrs. Callister was clearly entitled to a judgment. As no claim to the contrary has been made upon this appeal, discussion is unnecessary.

3. Mrs. Callister bases her third claim against the estate of her husband upon the following facts, as found by the surrogate :

"The said Margaret Callister is the holder and owner of a promissory note made by the intestate dated January 1st, 1884, to secure the payment of the sum of $1,200 with interest. The consideration for the said note was money which the said Margaret Callister had accumulated for the purpose of purchasing oil paintings and household decorations, and which was given to her husband at or about the time he made and delivered to her the said promissory note; there was no other consideration for said note, and there was no accounting or

settlement of accounts between the said parties when the note was given, and the note in no way related to or affected the other dealings and transactions hereinabove stated."

The referee and the surrogate permitted a recovery for the amount of the note, but the General Term reversed this part of the judgment also, without giving any reason therefor. No defense to the note was shown, and the learned counsel for the next of kin admits that Mrs. Callister is entitled to recover the amount thereof.

An important question arises, however, in connection with said note which requires consideration. Upon the trial the counsel for the next of kin called for this note, which, although included in the claim of Mrs. Callister, had not been offered in evidence by her. The note was thereupon produced by her counsel, who conceded that the signature thereto was that of the decedent, and it was then read in evidence under her objection and exception. The next of kin thus established a debt in favor of their adversary for the purpose of raising the presumption that all pre-existing accounts and demands between the parties were settled by the giving of the note. In order to repel this presumption, Mrs. Callister was called as a witness in her own behalf, and asked in substance what the note was given for, and what was said and done between her husband and herself at the time it was given. Notwithstanding the objection that this called for a personal transaction, and was hence incompetent under section 829 of the Code, she was permitted to testify to a state of facts warranting the finding, as subsequently made, that "there was no accounting or settlement of accounts when the note was given and" that "the note in no way related to or affected the other dealings" between the parties. The various rulings admitting this. evidence were duly excepted to and they are now defended upon the ground that when the note was put in evidence by the next of kin, it became "the testimony of the * * * deceased person" within the meaning of the statute. Section 829 of the Code, after prohibiting an interested survivor from testifying in his own behalf as to a personal transaction or

communication between himself and a deceased person, makes two exceptions to the general prohibition, viz.: Where the personal representative of the decedent is examined in his own behalf, or the testimony of the deceased person is given in evidence concerning the same transaction or communication. The last clause applies to both exceptions, for the examination of the representative must be concerning the same transaction, as well as the testimony of the deceased, in order to open the door. The first exception has no application to this case, for no one was examined in behalf of the next of kin, who derived their title from the decedent and stand in the place ordinarily occupied by the personal representative. Whether the second exception applies or not, depends upon the meaning of the word "testimony" as thus used in the statute. There is a distinction between testimony and evidence, for the former means statements made under the sanction of an oath, while the latter, which includes the former, but is more comprehensive, means whatever is received to establish or disprove an alleged fact. Testimony is personal, for it is the utterance under oath of a person, while evidence may be either documentary or oral. When a carefully drawn statute relating to evidence, aiming to preserve equality and to prevent unfair advantage, speaks of " the testimony of  *  *  *  the deceased person " as " given in evidence," we think it means by testimony the sworn statements of the deceased made on some prior occasion. (*Lyon* v. *Ricker*, 141 N. Y. 225, 231.) This construction is in accord both with the object of the statute and the language used in it. The context also shows that the legislature intended to give the word its ordinary meaning, as plainly appears from the next section. (§ 830.) The promissory note given by John Callister to his wife was evidence, but it was not the testimony of a deceased person. It would be a loose and dangerous construction to hold that when an instrument executed by a dead man is read in evidence by those who represent him, the living party to the document can testify to whatever was said and done when

it was executed. As was said by the General Term : " If this ruling is sustained, then in all cases the evidence created by a writing between the living and the dead may be overthrown by the evidence of the living as to the transaction out of which the writing was created, while the lips of the other party are closed, thus defeating the wise purpose of section 829." We find no well-considered case that so holds. The cases in this court relied upon to sustain the rulings excepted to are *Wadsworth* v. *Heermans* (85 N. Y. 639) and *Potts* v. *Mayer* (86 N. Y. 302). In the former it was expressly held that the inquiries did not involve a personal transaction, and in the latter the sworn testimony of the deceased person, as given by him on a former trial, was read in evidence before the survivor of the transaction was permitted to give his version of the same matter.

It is well settled that in an action brought by an executor upon a promissory note against the maker thereof, the latter cannot testify as to the consideration, when it involves a personal transaction with the deceased payee. (*Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375 ; *Alexander* v. *Dutcher*, 70 N. Y. 385.) Even when the executor as plaintiff proves by a witness certain conversations between the deceased and the defendant at a certain place, while the latter may testify that such witness was never present at that place when any conversation was had between him and the deceased, he cannot testify as to anything that was or was not said between them. (*Pinney* v. *Orth*, 88 N. Y. 447.) In *Lyon* v. *Ricker* (*supra*) this court said : " When the plaintiff proved by third parties the declarations of the deceased grantor made at a different time and upon another occasion than the transaction between the deceased and this defendant, those declarations so proved did not become the testimony of the deceased given in evidence within the section of the Code under consideration. Although declarations against interest are admitted the same as if the declarant were present and testified in person, yet proof of such declarations by competent third parties is not, within the meaning of this section, the testimony of a

deceased person, and it does not open the door for the admission of what would otherwise be plainly incompetent evidence under such section." The court had before it, when this decision was made, all the cases relied upon to justify the ruling in question. (p. 227. See, also, *Benjamin* v. *Dimmick*, 4 Redf. 7, 13.)

We think that the testimony of Mrs. Callister was erroneously received, and, hence, that the finding predicated upon it has no foundation to rest upon. Without that finding the presumption would be that the giving of the note was *prima facie* evidence of an accounting and settlement of all demands between the parties up to the date of the note. (*Lake* v. *Tysen*, 6 N. Y. 461; *De Freest* v. *Bloomingdale*, 5 Den. 304; *Wright* v. *Wright*, 74 Hun, 138.) Whether that presumption would extend to a demand not yet due, such as the claim for services rendered under the contract before marriage that did not become due until Mr. Callister died, it is unnecessary to now decide, for a new trial must be granted as to the individual claims presented by Mrs. Callister, since they may all be affected by the presumption unless it is rebutted. (*Tummonds* v. *Moody*, 20 N. Y. St. Repr. 812; Abbott's Trial Ev. 809.) As the finding was in her favor upon this point, she has the right to a new trial, so as to rebut the presumption by other testimony than her own, if she can, for it may be that there are other witnesses who can testify to the same facts as to which she was improperly allowed to speak. Since there must be a new trial as to all of her personal claims they require no further consideration upon this review.

The appeal brought by Mary Radcliffe and others, as next of kin of John Callister, involves a claim presented against his estate by Margaret Callister, as administratrix of her deceased father, Robert Walker. That claim has been fully and satisfactorily considered by the General Term and we do not care to add anything to what that learned court has said upon the subject. (88 Hun, 87.)

Our conclusion, therefore, is that upon the appeal brought by Margaret Callister, individually, the judgment of the Gen-

eral Term should be so modified as to award a new trial in accordance with the law as laid down in this opinion and as thus modified affirmed, with costs to abide event; and that upon the appeal brought by Mary Radcliffe and others, the judgment of the General Term should be affirmed, with costs to Margaret Callister, as administratrix of Robert Walker, deceased, the order to be settled by the judge who prepared the opinion of the court.

All concur.

Judgment accordingly.