MORTIMER HENDRICKS, Respondent, *v.* MONTEFIORE ISAACS, Administrator, etc., Appellant.

The common-law doctrine that husband and wife cannot contract with each other has not been changed by the legislation in this state respecting the rights of married women, and contracts between them are legally invalid.

Courts of equity, however, will give effect to transactions or agreements between husband and wife so far as they are just and fair and equitably ought to be enforced.

*It seems,* however, courts of equity will not enforce a mere voluntary agreement not founded upon any consideration, either in favor of the wife against the husband or in his favor against her.

M., the father of the plaintiff, died, leaving a will, by which he gave his estate to trustees in trust, among other things to pay over a portion of the income to J., plaintiff's wife, " to be by her applied to the maintenance and support of herself and her issue by her present husband." Soon after the death of M. plaintiff and his wife separated and thereafter lived apart, the children, excepting one, remaining with the mother and being supported by her. After the separation plaintiff made

advances to his wife, upon her written promise, to reimburse him from the interest when received by her out of the estate of the decedent. Upon the death of the wife plaintiff presented a claim against her estate for the amount so advanced. *Held,* that the contract was void at law, but being reasonable and just was enforceable and should be enforced in equity.

Defendant offered to prove that, between the time of the separation and the death of the wife, the latter expended in the support of herself and her children a sum exceeding the entire income to which she was entitled under the will, including what was received by her and that received by her administrator after her death, and that the debts owing by her exceeded the sum collected by the administrator from the testator's estate; this was objected to and excluded, *Held,* error; as if she had made such expenditures there would be no equity in enforcing the contract, and in that case the advances should be treated as if made in the fulfillment of his marital obligations.

*Hendricks* v. *Isaacs* (52 Hun, 100) reversed.

(Argued November 1, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 10, 1889, which modified, by deducting certain allowances for costs and affirmed, as modified, a judgment in favor of plaintiff, entered upon the report of a referee upon reference under the statute of a claim presented by plaintiff against the estate of his wife Justina B. Hendricks.

The referee found, in substance, the following facts:

Montague M. Hendricks, the father of the plaintiff, Mortimer Hendricks, died in May, 1884, leaving a last will and testament, which was duly admitted to probate by the surrogate of the county of New York. Said will provided for the payment to Justina B. Hendricks, plaintiff's wife, of a portion of the residue of the rents, issues, interest and income of the estate, and further provided as follows: " It is also my will that whatever moneys may be received by said Justina B. Hendricks under this clause are to be by her applied to the maintenance and support of herself and of the issue by her present husband." On May 26, 1884, the plaintiff advanced to his daughter Rowena Hendricks the sum of $200 and received from her therefor a writing in the words and figures following :

"LONG BRANCH, *May* 26, 1884.

"Rec'd from father an advance of two hundred dollars, to be repaid him from the interest due mother, when received by her, arising out of the estate of M. M. Hendricks, deceased."

Such paper was subscribed by the said Rowena, and at its foot was written the following: "I concur and agree to this," which was subscribed by the said Justina B. Hendricks.

Subsequently five other advances were made by plaintiff, for each of which advances he received from Rowena a similar writing, and having a like underwriting signed by the said Justina. The said advances were made by the plaintiff for the purpose of enabling the said Rowena to meet a portion of the ordinary expenses of the family (which portion the said Justina had agreed to bear), and were used and applied by the said Rowena for that purpose. The said Justina B. Hendricks died intestate, at the city of New York, on July 18, 1885. Between November 4, 1884, and May 2, 1885, the executors of said Montague M. Hendricks paid to the said Justina B. Hendricks, under the provisions of the said will, the sum of $3,000, and, since the death of said Justina, the said executors have paid to the defendant, as her administrator, out of the said Justina's share of the income of the estate of the said Montague, the sum of $2,743.18

Further facts are set forth in the opinion.

*William Man* for appellant. There was no consideration for any promise by the claimant's wife. (*Beach* v. *Beach*, 2 Hill, 260; *Coleman* v. *Burr*, 93 N. Y. 17; *Romer* v. *Koch*, 49 Hun, 183, 486; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 563; Pollock on Prin. of Cont. 161; *Crosby* v. *Wood*, 6 N. Y. 369; *Deacon* v. *Gridley*, 15 C. B. 295; 2 Pars. on Cont. 437; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392.) The papers sued upon are void under the statute of frauds. (*Castle* v. *Beardsley*, 10 Hun, 243; *Sears* v. *Brink*, 3 Johns. 210; *Kerr* v. *Shaw*, 13 id. 236; *Rogers* v. *Kneeland*, 10 Wend. 251; *Miller* v. *Cook*, 23 N. Y. 495; *Drake* v. *Seaman*, 97 id. 230.) If this was not a promise to pay the debt of

another, but a contract directly by her, then any obligation made by Mrs. Hendricks to her husband is absolutely void by the common law, and the married woman's enabling statutes do not enable her to contract with her husband. (*White* v. *Wager*, 25 N. Y. 328; *Winans* v. *Peebles*, 32 id. 423; *Savage* v. *O'Neil*, 44 id. 298.) If this was an equity suit to reach a special fund, then plaintiff had an equitable lien on that fund and the court could take an account of it and enforce payment of it in this suit. (*Bevan* v. *Cooper*, 72 N. Y. 317, 327; *Savage* v. *O'Neil*, 44 id. 298, 302.) No counter-claim can be established for an affirmative judgment in favor of defendant. (*Mowry* v. *Peet*, 88 N. Y. 453.)

*Abram Kling* for respondent. The estate of the decedent was chargeable in equity with the payment of the moneys advanced to her by the plaintiff, and which she agreed should be paid from the moneys bequeathed to her in the will of the father of this plaintiff. (*Jacques* v. *Trustees, etc.*, 17 Johns. 548; *Hendricks* v. *Isaacs*, 46 Hun, 240; *Rohrback* v. *G. L. Ins. Co.*, 62 N. Y. 47.) When decedent charged her separate estate with the payment of these moneys advanced to her, the mode in which she applied and disposed of these moneys can have no effect upon the rights of the plaintiff in this action. (*McVey* v. *Cantrell*, 70 N. Y. 295.) There was a perfect consideration for the advancement of the moneys by the plaintiff to the decedent. (46 Hun, 242; *Brodie* v. *Barry*, 2 V. & B. 36; 3 P. Wms. 335.) The agreement signed by decedent, in which she contracted, in consideration of the advancement of the moneys to her by the plaintiff, that she would repay the same out of the moneys when received from the estate of M. M. Hendricks, deceased, expressed a sufficient consideration to make her estate liable, and her concurrence to this paper, as signed by her daughter, has the same effect as if executed by her. (*Treadwell* v. *Archer*, 76 N. Y. 196; *F. N. Bk.* v. *Hurlbut*, 22 Hun, 310.) The claim is clearly referable under the statute, the defendant consenting thereto, he cannot raise the question on this appeal that the court had

no power to refer it to a referee to hear and determine the same. ( *White* v. *Story*, 28 How. 173.) The plaintiff was entitled, under the order of the General Term, to his costs of the appeal and his disbursements in this appeal. (46 Hun, 239 ; *Howell* v. *Von Sicklen*, 54 How. Pr. 204 ; *Larkins* v. *Maxon*, 103 N. Y. 680 ; *Krill* v. *Brownell*, 40 Hun, 72.)

ANDREWS, J. The advances made by the plaintiff to his wife in the summer of 1884 were made for the support of the family and upon her written promise to reimburse the plaintiff from the interest, when received by her, " out of the estate of M. M. Hendricks, deceased." This was the clear legal import of the writing, interpreted in connection with the circumstances. The money advanced, though received by the daughter, was received for the mother. The daughter entered into no engagement for its repayment. The receipts acknowledged the receipt of the sums advanced, and that they were to be repaid by the mother out of the fund specified. They were signed by the daughter, but the mother under- signed them, and her signature was preceded by the words, "I concur and agree to this." The mother thereby entered into an original obligation to repay the advances. It was her promise, and not a promise of the daughter guaranteed by her.

The origin and nature of the interest of Mrs. Hendricks in the estate of M. M. Hendricks, deceased, is explained by the evidence. Montague M. Hendricks, the father of the plaintiff, died in May, 1884, leaving a large estate. By his will he devised his real and personal estate to trustees, in trust, to receive the rents, income and profits, during the life of his wife, with directions to pay a certain sum thereout annually to his wife, and to distribute the remainder in equal parts to five children (other than the plaintiff), and Justina B. Hendricks, the plaintiff's wife, but in case of her remarriage after the death of the plaintiff her share was to be paid there- after to her issue by the plaintiff. The provision in favor of Justina, the wife of the plaintiff, concludes as follows : " It is

also my will that whatever moneys may be received by the said Justina under this clause are to be by her applied to the maintenance and support of herself and her issue by her present husband." The trustees paid to Justina during her life, out of the income to which she was entitled under the will, the sum of $3,000, the first payment being made November 5, 1884. She died in July, 1885, and the trustees paid to her administrator after her death $2,743.18, for income which had accrued on her share prior to her death, but which had not been paid over. It appears that the relations between the plaintiff and his wife were not friendly, and in the fall of 1884 they separated and lived apart until the death of the wife, the children (five in number), with one exception, remaining with the mother and being supported by her. The nature of the difficulty between the parents is not disclosed, nor does it appear under what circumstances the separation took place. The plaintiff presented to the administrator of the wife a claim against her estate for the advances made, which was referred under the statute, and judgment therefor has been awarded, and the point on this appeal respects the right of the plaintiff to have the contract made with his wife enforced against her estate.

The contract was void at law. The common-law doctrine that husband and wife could not contract with each other has not been changed in this state by legislation respecting the rights of married women. The entire and absolute disability of married women to enter into any legal contract, which was a stubborn and inflexible principle of the common law, has, indeed, in some respects, been modified. She may now, under our laws, purchase real and personal property and carry on business on her own account, and, as incident to these rights, she may enter into contracts with third persons for the purchase and sale of property, or in the prosecution of her separate business, enforceable in a legal action to the same extent as though she was a *feme sole.* But the disability to deal with her husband, or to make a binding contract with him, remains unchanged. Contracts between husband and wife are invalid

as contracts in the eye of a court of law to the same extent
now as before the recent legislation. (*Yale* v. *Dederer*, 18
N. Y. 265; *White* v. *Wager*, 25 id. 328; *Frecking* v. *Rolland*,
53 id. 422; *Cashman* v. *Henry*, 75 id. 103.) If any excep-
tion exists it has been created by the act of 1887, not applica-
ble to the transaction in question.

. But the doctrine of the unity of husband and wife, by
which the legal existence of the wife was deemed to be
merged in that of her husband, preventing them from con-
tracting with each other as if they were two distinct persons,
never prevailed in courts of equity. It may be more accu-
rate to say that courts of equity disregard the fiction upon
which the common law proceeded, and are accustomed to
lay hold of and give effect to transactions or agreements
between husband and wife, according to the nature and
equity of the case. A court of equity does not limit its
inquiry to the ascertainment of the fact whether what had
taken place would, as between other persons, have constituted
a contract, and give relief, as matter of course, if a formal
contract be established, but it further inquires whether the
contract was just and fair, and equitably ought to be enforced,
and administers relief where both the contract and the circum-
stances require it. The jurisdiction in equity has been fre-
quently exercised to enforce contracts or agreements for settle-
ment, made between husband or wife before or after marriage,
in favor of the wife, whether made with or without the inter-
vention of trustees. Reference to the cases will be found in
the elementary treatises. It has also been exerted, though less
frequently, to enforce agreements in favor of the husband for
a settlement out of the property of the wife, or to charge her
separate estate in his favor. (*Cannel* v. *Buckle*, 2 P. Wms.
243; *More* v. *Freeman*, Bunb. 205; *Livingston* v. *Livingston*,
2 Johns. Ch. 537; *Gardner* v. *Gardner*, 22 Wend. 526;
2 Kent's Com. 167.) But courts of equity do not entertain
jurisdiction to enforce mere voluntary agreements not founded
upon any consideration, either in favor of the wife against the

husband or in his favor against the wife; but if they have been consummated, and are fair and just, courts of equity will uphold the transaction, except as against creditors. (*Reade* v. *Livingston*, 3 Johns. Ch. 481; 2 Story's Eq. §§ 986, 1377, and cases cited.)

It is insisted, on the part of the appellant, that the agreement of Mrs. Hendricks to contribute out of her estate to the maintenance of herself and the family is not supported by any consideration, since the law casts upon the husband the duty of maintaining his household. There is no doubt that the primary obligation is upon the husband to provide for the support of his wife and their infant children, and as between the husband and wife the latter is not bound to maintain her husband and children during his life out of her separate property, even although his means may be inadequate. (*Hodges* v. *Hodgens*, 4 Clk. & Fin. 323; (H. of L.) 11 Bligh (N. R.), 62.) But when the income of the wife has been applied with her consent to the maintenance of the family, she can make no claim for reimbursement out of the husband's estate. The question was considered in *Jaques* v. *Methodist Episcopal Church* (17 Johns. 548), where it was held by the court of errors, reviewing the decision of the chancellor, that where the wife agreed by parol before marriage, concurrently with the making of a marriage settlement, to defray the expenses of the family establishment out of her separate estate, the husband is not only not accountable for the moneys received by him of his wife, and expended for that purpose, but was entitled also to an allowance for all advances made by him therefor.

In the present case the agreement entered into by the wife was, in substance, to share with the husband in defraying the expenses of herself and the family, and to reimburse him for advances made by him for her under the arrangement. There was a technical consideration for her promise, in the payment by the husband to her of a gross sum of money for expenses, to be applied in her discretion, which he was not bound to do under his common-law obligation to support his wife and children. In considering the equity of the arrangement, it is

an important fact that the income which the wife pledged for her husband's reimbursement came from the bounty of her husband's father, and that it was the intention of the testator that she should apply it for the maintenance and support of herself and her children.    It is not necessary to decide whether, under the quite peremptory terms of the will, the wife took the income charged with a trust, enforceable in favor of the children to the extent necessary for their support and maintenance, although there are many authorities which at least give color to this contention.  (*Bonser* v. *Kinnear*, 2 Giff. 195; *Pushman* v. *Filliter*, 3 Ves. 7; *Leach* v. *Leach*, 13 Sim. 304; *Raikes* v. *Ward*, 1 Hare, 445; *Woods* v. *Woods*, 1 Myl. & Craig, 401; *Carr* v. *Living*, 28 Beav. 644; *Cole* v. *Littlefield*, 35 Md. 439; *Chase* v. *Chase*, 2 Allen, 101.)    But see *Clarke* v. *Leupp* (88 N. Y. 228) and *Byne* v. *Blackburn* (26 Beav. 41).

If there were no other circumstances bearing upon the general equities than those already stated, it seems to us that the contract made by the wife for reimbursement of the advances made by the husband was reasonable and just and ought to be enforced.    There is certainly no moral reason for forbidding a wife, having a separate estate, to contribute thereout to the support and maintenance of the family, or to contract to do so.    There was sufficient consideration for her agreement in this case, and the terms of the gift to her in the will of the plaintiff's father imposed upon her a moral duty to carry out his intention.    She, instead of the son of the testator, received the share of the estate, which, under ordinary circumstances, would have gone to her husband.    Why the son was excluded from the bounty of the father does not appear.    But we think facts were offered to be shown on the part of the defendant, which the referee excluded, material to the inquiry, whether the contract in question ought in equity to be enforced.    The defendant offered to prove that between the time of the separation of the parties in September, 1884, and the death of the wife in July, 1885, the latter expended in the support of herself and her children a sum exceeding the entire income to which she was entitled under the will, including both the

amount paid to her in her lifetime, and that received by her administrator after her death, and, further, that the debts owing by the wife at her decease exceeded the sum collected by her administrator from the estate of the testator, on account of income accrued, but unpaid at her decease. If the wife expended for the support of herself and her family an amount equal to or exceeding the whole income which accrued to her under the will, there would seem to be no equity in the claim of her husband for the enforcement of the contract in question. The fact that he made advances for the maintenance of his family, and exacted from his wife a promise of reimbursement, gave him, we think, no equitable claim against his wife's estate under the circumstances offered to be proved. His advances, under those circumstances, ought to be treated as if made in fulfillment of his general marital obligations. We think both facts were competent as bearing upon the equity of enforcing the contract. Whether the wife actually applied out of her own means, in support of the family, a sum equal to or greater than the income which accrued to her under the will, or obtained supplies in part on her own credit, contracting debts therefor, which were unpaid at her death and became a charge on her estate, is not material. In either case there would be no equity in the plaintiff's claim.

The fact that this is not a proper proceeding for ascertaining the debts owing by Mrs. Hendricks at her death, is unimportant. The creditors will not, it is true, be bound by any adjudication as to their debts in this proceeding. But the plaintiff having presented his claim and demanded judgment therefor against the estate of his wife, it was competent for the administrator, in answer thereto, to show any facts which tend to prove that it has no legal or equitable foundation.

We think the judgment of the General and Special Terms should be reversed and the case remitted to the surrogate for further proceedings.

All concur, DANFORTH, J., in result.

Judgment reversed.