FRANK BRUNDAGE, Respondent, *v.* DEVINE N. MUNGER and LAURA MUNGER, Appellants.

*Judgment creditor — he has no lien on the house and lot of the judgment debtor's wife for interest on mortgages, insurance, taxes and repairs thereon paid by the debtor.*

Where a husband in 1882, when solvent, pays out of his own funds the consideration for a house and lot conveyed to his wife as a family residence, and in 1889 becomes insolvent, a judgment creditor of the husband, whose judgment was obtained in 1890, upon a contract bearing date in 1880, is not entitled to a lien upon the premises for moneys voluntarily paid by the husband in lieu of rent, without an express agreement with his wife, for interest on mortgages, insurance, taxes and repairs amounting to about one-half the rental value.

APPEAL by the defendants, Devine N. Munger and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 4th day of May, 1900, upon the decision of the court rendered after a trial at the Kings County Special Term.

*William S. Maddox,* for the appellants.

*Edward Hassett,* for the respondent.

GOODRICH, P. J.:

In April, 1890, one Connelly recovered a judgment against the defendant Devine N. Munger for $2,086.18 upon a contract dated April 28, 1880, for the sale of a canal boat. Execution was issued on the judgment and returned unsatisfied in May, 1896. The judgment was assigned to the plaintiff in October, 1898. This action was commenced in November, 1899. The complaint alleges that in 1882 Devine N. Munger purchased and out of his own funds paid for the house and lot 96 Hancock street, Brooklyn, for $12,500; that the deed thereto was taken in the name of his wife Laura, with intent on the part of both to hinder, delay and defraud creditors, and especially to prevent the collection of the plaintiff's claim, and that the deed was fraudulent and void. There was also an allegation that since such purchase the husband, out of his own funds, had paid off certain mortgages or parts of mortgages on the property and the interest on the mortgages, the taxes, insurance and

repairs. . There was no allegation that the husband was insolvent at the time of the purchase or at any time, except the allegation as to the recovery of the plaintiff's judgment and the return of an execution thereon unsatisfied.

The plaintiff prayed that the deed should be declared fraudulent and void, and if it should not be so declared, that the judgment should be adjudged a lien on the premises.

The court did not find the conveyance to the wife to be in fraud of creditors, but found, as matter of fact, that certain payments made by the husband for interest on mortgages, taxes, assessments, insurance and repairs, since January, 1890, " were made without any consideration, and as a gift to his said wife and to place his moneys and property in his wife's hands beyond the reach of his said creditors," and that such payments were made out of Mr. Munger's own funds, with intent to hinder, delay and defraud the plaintiff and prevent the collection of the judgment. The court found as matter of law that such payments were fraudulent as against the plaintiff and that the plaintiff was entitled to judgment declaring the amounts paid by Mr. Munger for interest, taxes, assessments, insurance and repairs were a lien on the property ; that the latter should be sold subject to a mortgage of $5,000 thereon and the plaintiff paid out of the proceeds the amount of his judgment. From the judgment entered thereon the defendants appeal.

Much of the evidence as to the insolvency of the husband is unimportant, under the concession made by the plaintiff at the trial, that the husband was solvent down to 1889. In view of this concession, the court was right in not adjudging the original conveyance fraudulent. This confines our discussion to the conditions existing after that date and the results deducible therefrom.

Mr. Munger, since January, 1890, has been employed in business at Glen Cove at an annual salary of $2,500, and, so far as the record shows, he had no other property and owed no debt other than the judgment. The defendants have occupied the house as their home since its purchase, although during the summer they lived in a cottage near the husband's place of business at Glen Cove, for which he paid sixteen dollars per month. They had four children, some of whom resided with them. There was no express agreement between husband and wife as to the occupation of the house or the

payment of the taxes, interest, insurance and repairs. On his examination in supplementary proceedings Mr. Munger testified as follows: "I do not pay my wife any house rent for the house 96. Hancock street, and never have. * * * I have no agreement with Mrs. Munger for paying a monthly or yearly rental. I have always paid the interest on the mortgages, the insurance and taxes since it was purchased. * * * Their* arrangement by which I pay the interest, insurance, taxes and repairs on 96 Hancock street has always been satisfactory to Mrs. Munger and myself in lieu of my paying rent, except she thought she didn't get as much out of it as she ought, and that remains true up to this time." The rental value was proved to be about $900, and the aggregate amounts paid by Mr. Munger since 1890 were about $327 per annum.

We have, then, this state of affairs: The house was the separate property of Mrs. Munger, and there was no fraud in its original acquisition in 1882. Since that time, and for eighteen years, the defendants have used and occupied it as a family residence. The family consisted of one daughter and three sons, one of whom is not yet of age and is still living with his parents. The other children have married or are now absent from home. During all these years there has been no express agreement that the husband should pay any rent; but out of his salary, for the last ten years, among other expenses paid for the support of the household, he has voluntarily paid interest, insurance, taxes and repairs, amounting yearly to a sum less than one-half the rental value. In order to affirm this judgment, we must hold that these facts created a constantly growing lien upon the wife's separate estate, by which a judgment creditor, upon the contract entered into ten years before the insolvency of the husband, can quietly lie for ten years more, sleeping on his rights until the amount paid by the husband has equalled the amount of the judgment, and then succeed in fastening the judgment as an equitable lien on the property of the wife. We cannot assent to any such proposition, the very statement of which would seem to be its own refutation.

It is hardly necessary to cite authority that the obligation and duty of the husband to support his family is primal and important

---

* *Sic.*

and that, as between husband and wife, the latter is not bound to maintain her husband out of her separate property, even though his means be inadequate. (*Hendricks* v. *Isaacs*, 117 N. Y. 411.) The wife, not being legally bound to support her husband, cannot recover money voluntarily paid by her for such support. (*Third Nat. Bank* v. *Guenther*, 123 N. Y. 568; *Nostrand* v. *Ditmis*, 127 id. 355.)

It would seem to follow that where a husband voluntarily expends money in paying the current expenses of interest, taxes, insurance and repairs on the family residence belonging to his wife, instead of paying rent, he is simply fulfilling the duty which law and society impose upon him and which is approved by good morals. To adjudge a lien on the property of Mrs. Munger would be to question such duty and would unsettle the holding of hundreds of homesteads in this State where of common knowledge similar conditions exist.

It was held in *Niver* v. *Crane* (98 N. Y. 40) that a judgment creditor's action can reach only property belonging to or things in action due to the judgment debtor or held in trust for him. Neither of these conditions is presented in the case at bar. Mr. Munger, being legally bound to support the family, could not have recovered from his wife for payments voluntarily made by him for interest, taxes, insurance and repairs on the household residence, nor can it be said that Mrs. Munger holds any money in trust for him.

The respondent's counsel relies upon *Isham* v. *Schafer* (60 Barb. 317) as authority in support of his theory, and even goes to the length of quoting from the arguments of the counsel. I can find no case in which this decision has been cited with approval, even if it supports the plaintiff's contention, to which I cannot assent. The judgment for the plaintiff in that case was reversed solely on the ground of error in the admission of evidence, but the court proceeded to discuss the theories of the case and the principles upon which the new trial was to be conducted. The allegation was, and the court below found, that the husband, being insolvent, paid the consideration of the deed of the land to the wife with intent to defraud existing creditors, and that thereafter he expended money in building a house thereon by way of gift to his wife and with a similar intent. A part of the plaintiff's claim was for materials sold

by him to the husband and used in the construction of the house. The court said (p. 331): " In every such case, however, it must appear that the debtor has contributed something in the nature of property to the real estate of another. Something which the creditor had the right to claim as property, and which could be appropriated and converted into money by legal process to satisfy a debt or demand. If it was something else, for instance, the mere labor or skill of the debtor gratuitously bestowed, no such relief could be had on account of it. * * * And so it has been held that a husband who acts as agent for his wife and oversees her affairs gratuitously, does not thereby render his wife liable to his creditors for what such services might be worth if compensation were to be made. (*Buckley* v. *Wells*, 33 N. Y. 518, 523.)" Instead of being authority for the plaintiff's contention, I regard this case and *Buckley* v. *Wells* as recognizing the principle that a husband, though insolvent, may contribute to his wife's estate under some circumstances without creating a lien in favor of creditors. We can see no difference in the result, whether the contribution is of the husband's direct and personal service to the wife in her business or a payment of money derived from his salary, where such payment is for the current expenses of maintaining a home for his family and keeping the same in repair. The duty of supporting his family and providing a home is one which he owes to them as well as to society. This is a duty imposed by law upon the husband.

We must not lose sight of the fact that the trial court in the case at bar has not adjudged the original conveyance to have been in fraud of the creditors. On the contrary, this claim seems to have been abandoned by the plaintiff when he conceded that Mr. Munger was solvent down to 1889, several years after the purchase.

We are of opinion that the law and the testimony did not support the decision of the learned trial justice, and that the judgment should be reversed.

All concurred, except BARTLETT, J., absent.

Judgment reversed and new trial granted, costs to abide the final award of costs.