# NORWOOD v. FRANCIS.

PARTNERSHIP; VOLUNTARY ASSOCIATIONS; HUSBAND AND WIFE.

1. In an action by a depositor in an insolvent unincorporated savings bank against certain of its members as copartners, where the defense of one of them is that he had withdrawn as a member, as provided for by the by-laws, prior to the plaintiff's becoming a depositor, testimony of a former suit tried six years before the plaintiff made his deposit and three years before such defendant withdrew as a member, in which suit it was shown that the defendant was then a member of the association, and offered by the plaintiff to show that it was generally known that such was the case, is inadmissible.

2. An unincorporated joint stock company carrying on the business of a savings bank in this District is a copartnership, and each of its members is liable for its debts.

3. A former member of an unincorporated joint stock association who had withdrawn therefrom as allowed by its by-laws, and sold his stock, although he had been unable after repeated efforts to obtain a transfer of the stock on the association books to the purchaser, is not liable to a depositor of the association whose deposit was made after such withdrawal and sale of stock, and where the former connection of such former member of the association was not known to the depositor at the time he made his deposit.

4. A married woman may enter into a contract of copartnership under sec. 3 of the act of Congress of June 1, 1896, which provides that a married woman "may carry on any trade or business, occupation or profession, by herself, or jointly with others," and may become liable to a creditor of an unincorporated insolvent joint stock association by reason of her ownership of stock therein, even though she has not participated in any way in the conduct ot the business of the association.

5. In this District a married woman cannot enter into a valid copartnership contract with her husband, although she may do so with others (construing sec. 3 of the act of Congress of June 1, 1896) ; and especially may she not be held liable by a creditor of an insolvent unincorporated joint stock association of which her husband is a member, by reason of her ownership of shares therein, where her name was signed to its articles of association by her husband without her

knowledge, and the shares, of which she never had the actual posses-
sion, were given to her by her husband prior to the passage of that
act and at a time when she was absolutely disqualified from becoming a
member of such copartnership; although subsequent thereto a dividend,
of which she had no knowledge, was placed to her credit. Under such
circumstances there cannot be said to have been a ratification by her
of the act of her husband.

No. 1466.   Submitted April 11, 1905.   Decided May 2, 1905.

HEARING on an appeal by the plaintiffs from a judgment of
the Supreme Court of the District of Columbia upon a verdict
directed by the court in an action against the members of a
voluntary association sued as copartners.          *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal by the appellants, John C. Norwood and
Thomas H. Wright, executors of Charles F. Murray, who were
the plaintiffs below, from a judgment in favor of the appellees,
John R. Francis and Anna M. Johnson, entered in pursuance
of a verdict found under the instructions of the court. Charles
F. Murray, in November, 1901, deposited $2,880 in the Cap-
ital Savings Bank. This bank, organized in the District of
Columbia in 1888, was an unincorporated joint stock company,
carrying on its business under written articles of agreement
signed by its stockholders. It failed in November, 1902, and
receivers of its assets were appointed January, 1903. The suit
was brought originally against several of its alleged stockholders,
and included among the number were these appellees. As the
defenses interposed on behalf of the appellees are different, they
will be separately considered.

1. In October, 1892, the appellee, John A. Francis, pur-
chased five shares of the bank stock. On November 1, 1898, he
sent to the company the following notice of withdrawal:

Nov. 1st, 1898.

To the Directors and Stockholders Capital Savings Bank.

Gentlemen: Permit me to hereby notify you of my withdrawal as a stockholder from the Capital Savings Bank.

You will please forward to me, at your earliest convenience, the amount which my five shares of stock are worth at this date.

Regretting the circumstances that compel me to withdraw, I am,                    Respectfully yours,

John R. Francis.

Article 12 of the articles of association, providing for withdrawals, is as follows:

"Any member of the company may withdraw therefrom, by giving thirty (30) days' notice, and settlement shall be made with him in the manner hereinafter provided for. But the company reserves the right to postpone the payment of what may be due him from the company for ninety days after the date of filing of such notice of withdrawal."

Receiving no reply to his letter in April or May, 1899, he sold his stock to one Tyson, and demanded that the board of directors transfer the shares to Tyson. Obtaining no satisfaction, on October 9, 1899, he sent the following letter:

Washington, D. C., Oct. 9, 1899.

To the Board of Directors and Stockholders of the Capital Savings Bank.

Gentlemen: Some months have passed since I made an application for the transfer of my stock to Mr. Henry C. Tyson, to whom it was sold. Up to the present time I have received neither anything definite as to your action in the matter, or the return of certificates to Mr. Tyson or myself.

I again apply hereby for a properly certified transfer of stock and a return of certificates.

Yours respectfully,

John R. Francis.

A few days later he addressed a communication to the di-

rectors and stockholders of the bank, stating that he declined the appointment to a directorship in the bank, as he was not a stockholder, and requested that his name be canceled from the list of officers. At the same time he again called attention to his desire for a proper transfer of his stock, and stated that it was the third time that he. had made such application. He never was an officer or director of the bank, nor in any way took part in its management, nor ever attended any of the meetings of the stockholders or directors, and received no dividends on his stock after November 1, 1898, and had no deposit account with it.

There is no evidence to show that Murray, when he made the deposit to recover which this suit is brought, had any knowledge that Francis was or ever had been connected in any way with the bank, although the record shows that an offer was made to show that at a trial of a case in the supreme court of the District of Columbia, in 1895, the articles of agreement of the bank, and the names of the signers, including that of Francis, were read in evidence. This evidence, as stated, was for the purpose of showing that it was generally known in the city of Washington at that time that Francis was a member of the company. The testimony was ruled out by the presiding judge, and properly so, we think. The trial occurred six years before Murray made his deposit, and three years before Francis withdrew as a member of the association.

*Mr. A. A. Birney* and *Mr. Wm. H. Richards,* for the appellants:

1. The unincorporated joint stock company, styled "Capital Savings Bank," was, in contemplation of law, a partnership, and each member thereof was liable for all the debts of the company. It is styled a partnership in the articles. The court held this position with the plaintiffs, and was clearly right. *Woodward v. Nelligan,* 19 App. D. C. 550; *Chapman* v. *Barney,* 129 U. S. 677, 682; 17 Am. & Eng. Enc. Law, 2d ed. pp. 637, 638, 641, 683; 2 Lindley, Partn. 845, 1083, 1084; *Clagett* v. *Kilbourne,*

1 Black, 346; *Liverpool Ins. Co.* v. *Massachusetts,* 10 Wall. 566; *Phillips* v. *Blatchford,* 137 Mass. 425; *State ex rel. Railroad & W. Commission* v. *United States Exp. Co.* 81 Minn. 87; *People ex rel. Winchester* v. *Coleman,* 133 N. Y. 279; *Carter* v. *McClure,* 98 Tenn. 109, 38 S. W. 585.

2. Dr. Francis was an active, not a dormant, partner. The articles of agreement expressly reserved to the stockholders the right to control and direct the business. If he is to be considered a dormant partner because his name did not appear in the name of the bank, then all his associates were also dormant, and there were no active partners. This cannot be. *Shamburg* v. *Ruggles,* 83 Pa. 148; *Howell* v. *Adams,* 68 N. Y. 314; 1 Bates, Partn. sec. 151; 2 Bates, Partn. sec. 609. Members of a joint stock company are general partners. *King* v. *Dodd,* 9 East, 516, 527; Gow, Partn. p. 17, 1 Bates, Partn. 459. To constitute one a dormant partner, he must be a secret one; it must be intended that he shall remain unknown. 22 Am. & Eng. Enc. Law, 2d ed. p. 63; 1 Bates, Partn. secs. 10, 151; 3 Stephens, Nisi Prius, 2376; *Podranik* v. *Martin,* 25 Ill. App. 300; *Elmira Iron Co.* v. *Harris,* 124 N. Y. 294.

3. The proper foundation for the introduction of secondary evidence of Francis's alleged letter of withdrawal was not laid, and the objection to the copy was well taken. The mere fact that the cashier was not within the jurisdiction of the court was not enough. The authorities upon this proposition are not agreed but we submit that the better rule is that which supports our contention (23 Am. & Eng. Enc. Law, 2d ed. p. 172; *Turner* v. *Yates,* 16 How. 14); and it should appear that some effort was made to procure the original paper. *Kearney* v. *Mayor,* 92 N. Y. 621; *Wiseman* v. *Northern P. R. Co.* 20 Or. 461.

4. But Francis did not withdraw. 2 Bates, Partn. sec. 575. No action was taken by the directors upon his alleged letter of October 1, 1898, and he withdrew it in the most unequivocal manner by the sale of his shares and by his demands upon the board for transfer to Tyson. The board took no action upon the letter of withdrawal, and did not take up or cancel the certifi-

cates of stock, which Dr. Francis afterwards delivered, with a demand that they be transferred to Tyson. It should be held that by mutual agreement the withdrawal was canceled. *Spragons* v. *Lawson* (Ky.) 60 S. W. 373.

5. If Murray knew Dr. Francis as a member of the banking company, the withdrawal of Francis by private letter to the board of directors would not relieve him of liability to Murray, —a subsequent dealer,—without proof of a general notice to the public of the withdrawal, or knowledge thereof in Murray. *Clark* v. *Fletcher,* 96 Pa. 416; *Lovejoy* v. *Spafford,* 93 U. S. 430; 22 Am. & Eng. Enc. Law, p. 177.

Appellants offered to prove that it was generally well known in Washington that Dr. Francis was a member of the company. This they were entitled to, for from it a knowledge in Murray might have been presumed. *Bernard* v. *Torrance,* 5 Gill & J. 383; *Fletcher* v. *Pullen,* 70 Md. 205; *Drake* v. *Pinkney,* 1 Caines, 184; *Whitney* v. *Sterling,* 14 Johns. 215; *Gowan* v. *Jackson,* 20 Johns. 176; *McPherson* v. *Rathbone,* 11 Wend. 96; *Allen* v. *Rastain,* 11 Serg. & R. 373. Such testimony was also received in the trial court in *Winship* v. *Bank of United States,* 5 Pet. 534. This evidence should have been received, and its rejection was reversible error. *Lovejoy* v. *Spafford,* 93 U. S. 430; *Askew* v. *Silman,* 95 Ga. 682; *Central Nat. Bank* v. *Frye,* 148 Mass. 500; *Solomon* v. *Kirkwood,* 55 Mich. 261.

6. The court relieved Mrs. Johnson from liability because of her coverture. Two propositions were urged: First, that a married woman may not be a partner with her husband alone, or with others and her husband; second, that the right of the married woman to "carry on a trade or business, occupation or profession, by herself or jointly with others," as declared by the act of 1896, is limited by implication to pursuits to which she gives her personal care and attention. Neither objection can be maintained without disregard of the plain words of the statute. Little aid can be had from decisions of State courts in applying statutes less liberal than ours. We concede that at common law the *feme covert* was without capacity to form a partnership with her husband, or with others. This is yet the rule

in Ohio (24 Ohio St. 87), Indiana (91 Ind. 384), Maryland (41 Md. 19), West Virginia (20 W. Va. 571), Texas (61 Tex. 437; 65 Tex. 131), and probably in some other States; but this is only because of the limited changes of the common law in those States where the statutes provide, in substance, only that a married woman may have a separate estate, and may contract in reference to the same. This was the substance of our statute of 1869, which was superseded by the act of June 1, 1896. Obviously, decisions under such statutes cannot aid us. In Massachusetts and in Michigan it is held that under the statutes there in force the married woman may enter a firm as partner, if her husband is not a member thereof. *Plumer* v. *Lord,* 7 Allen, 481; *Vail* v. *Winterstein,* 18 L. R. A. 515; *Artman* v. *Ferguson,* 73 Mich. 146; *Lord* v. *Parker,* 3 Allen, 127. It is to be noted that nearly all this line of cases under statutes declaring the right of the married woman to trade as a *feme sole* deny her power to become partner with anyone. *Bradstreet* v. *Baer,* 41 Md. 19; Note to *Gilkerson Sloss Commission Co.* v. *Salinger,* 16 L. R. A. 526; *Miller* v. *Maux,* 65 Tex. 131; 91 Ind. 384. None of the statutes referred to in the decisions cited give the *feme covert* the express right to enter into partnership, as does our statute. See Harris, Contracts of Married Women, p. 511; 1 Lewis's Bl. Com. 442, note 77. In New York it was held that a married woman, partner with her husband, was liable to creditors of the firm, though she might not be liable as between her husband and herself. The argument of the court that if a woman may be held liable upon her sole contract she will be equally liable if another be bound with her, appears to us logically unanswerable. *Suau* v. *Caffe,* 122 N. Y. 308. To the same effect are: *Re Kinkead,* 3 Biss. 405; *Tibbatts* v. *Tibbatts,* 6 McLean, 80; *Benard* v. *Packard,* 64 Fed. 309; *Burney* v. *Savannah Grocery Co.* 88 Ga. 711; *Toop* v. *Brewer* (Miss.) 3 So. 571; *Gutman* v. *Scannell,* 7 Cal. 455; *Snell* v. *Stone,* 23 Or. 327, 31 Pac. 663; *Louisville & N. R. Co.* v. *Alexander,* 16 Ky. L. Rep. 306; *Dunifer* v. *Jecko,* 87 Mo. 282; *Le Grand* v. *Eufaula Nat. Bank,* 81 Ala. 123; *Hoagland* v. *Henderson,* 119 Iowa, 720; *Lane* v. *Bishop,* 65 Vt. 579. It is the tendency of

both legislation and decision to emancipate woman. *Wells* v. *Caywood,* 3 Colo. 487; Harris, Contracts of Married Women, sec. 508, and note; 1 Burge, Colonial & Foreign Laws, p. 218; Civil Code, art. 220; Code of Commerce, 4, 5, 7; La. Code, 128.

7. The position of the learned judge below, that, under the act of 1896, the business in which a married woman engages must be of such nature as to permit her personal control, is not warranted by the statute, and is believed to be without precedent to sustain it. It is regulated by the provision that she may engage in business "jointly with others," for this necessarily means that she may have partners, and these partners may transact business for the firm, and, as agents for all, involve members thereof. In the court below, counsel for Mrs. Johnson cited *Holmes* v. *Holmes,* 40 Conn. 117, to support this second proposition. The case is inapplicable. The Connecticut statute provides that "whenever any married woman shall carry on business, and shall incur any debt on account of the same," she shall be liable. The defendant, a married woman, living with her husband, rented some of the rooms in their dwelling to one Beardsley. Held, this was not carrying on business within the meaning of the statute, just as purchasing a horse does not make the buyer a dealer.

8. It will be contended that Mrs. Johnson, having received the shares in question from her husband, was not the owner of them. We answer: She held the shares until July, 1902, six years after the passage of the married woman's act of 1896, and, having previously received dividends, accepted one on July 16 of that year, which she checked out, for her account was overdrawn when the bank failed. It is true that she transferred the shares to her husband four months before the bank closed its doors, as testified by her. She did this in the exercise of her right as owner and in anticipation of dissolution, not as a mere depositary or custodian of shares which she was bound to convey. Her ownership cannot now be repudiated. *Williams* v. *Butler,* 35 Ill. 550; 2 Bates, Partn. sec. 574; George, Partn. pp. 498, 499.

*Mr. J. J. Darlington* for the appellee Anna M. Johnson.

*Mr. John B. Larner* and *Mr. Arthur Peter* for the appellee
John R. Francis.

Mr. Justice DUELL delivered the opinion of the Court:

Upon the above state of facts Francis's liability for the debts
of the bank turns upon the question whether he was a stock-
holder and member of the partnership at the time of its failure,
for there can be no question but that this joint stock company,
organized and carrying on its business within the District of
Columbia, was in law a partnership and its members each liable
for all of its debts. It is equally true, we think, that Francis,
so far as the other stockholders were concerned, ceased to be a
partner in the fall of 1898. Nothing he did after that date
reinvested him with the duties or obligations of a partner. He
complied with the articles of agreement in withdrawing from
the company, and, from the mere fact of being unable to obtain
from the company the amount due him for his shares, he was
justified in selling them to a third party. If the partnership
refused to recognize the purchaser as a member of the company,
as undoubtedly they had a right to do, the purchaser might have
looked to Francis for any injury caused him; but the fact that
the company refused, if it did, to accept Tyson as a member,
would not result in continuing Francis as a member against his
will and in the face of the notice of November 1, 1898. We
think that Francis did all that was necessary for him to do to
sever his relations with the company. We do not think that he
owed any further duty to his fellow members or to future de-
positors. It does not appear that the articles of agreement, or
the names of the members of the company, were published in
any newspaper or filed in any public office, as required by the
laws of many states relative to ordinary or special partnerships.
Had it been shown that Murray made the deposit with knowl-
edge that Francis had once been a stockholder, then a different

question might be presented than the one we are called upon to decide.

We have examined the authorities cited by counsel for both parties, and there seems to be the usual conflict ordinarily found in the decisions of the various State courts. It is, in our opinion, unnecessary to consider them and decide which line of cases give the best reasons for the conclusions arrived at. We consider the decisions of the Supreme Court in *Thompson* v. *First Nat. Bank,* 111 U. S. 529, 28 L. ed. 507, 4 Sup. Ct. Rep. 689, to be controlling. In the opinion of that case the authorities, both English and State, are exhaustively reviewed. In that case the court below had refused to instruct the jury that if Thompson was not, in fact, a member of the partnership, the plaintiff could not recover unless it was shown by the testimony that he had knowingly allowed himself to be held out as a partner and knowledge of this plaintiff had during its transaction with the partnership. The court said: "A person who is not in fact a partner, who has no interest in the business of the partnership, and does not share in its profits, and is sought to be charged for its debts because of having held himself out, or permitted himself to be held out, as a partner, cannot be made liable upon contracts of the partnership except with those who have contracted with the partnership upon the faith of such holding out. In such a case, the only ground of charging him as a partner is that, by his conduct in holding himself out as a partner, he has induced persons dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the partnership. As his liability rests solely upon the ground that he cannot be permitted to deny a participation which, though not existing in fact, he has asserted or permitted to appear to exist, there is no reason why a creditor of the partnership, who has neither known of nor acted upon the assertion or permission, should hold as a partner one who never was in fact, and whom he never understood or supposed to be, a partner, at the time of dealing with and giving credit to the partnership."

We think the court below was right in instructing the jury

that upon the whole testimony their verdict must be in favor of the defendant Francis.

2. As to the appellee, Anna M. Johnson, the record discloses that she was a married woman at the time of the trial, and had been for more than twenty-five years the wife of one of the co-defendants, Jerome A. Johnson, and that as early as July, 1892, her husband gave her two shares of stock of the Capital Savings Bank. An account had been kept in her name in the bank, which showed that certain dividends had been applied to her account, the last one on July 16, 1896. She testified that she did not know how the account stood when the bank closed, as all of the business was transacted through her husband, and that she had nothing to do with it; that she never had a pass book of the bank, and that when dividends were declared upon the shares of bank stock her husband would speak to her about it; that some years before giving her testimony, which was in July, 1904, she had signed checks at her husband's request, so that he could draw the dividends; that she never gave any authority to her husband to take the stock for her; that she had nothing to do with the bank; that her husband would give her checks to sign, and that she did not know what became of the money. In July, 1902, she transferred the stock back to her husband, with all the things he had given her, as she was then a sick woman, and that if anything happened to her she wanted it to go back to his people. The articles of agreement which were read in evidence disclose the name of *Annie M. Johnson* as one of those signing the articles. There is no question raised as to this being the name of the appellee. Upon this state of facts the court below instructed the jury to return a verdict in her favor.

Three questions are presented for our consideration. The first raises the question whether the ownership by a married woman of one or more shares of stock in a joint stock company is the carrying on of a trade, business, or occupation by her within the terms and meaning of the act of June 1, 1896, commonly called "The Married Woman's Act." The second question is whether a wife can be a member with her husband in such a

partnership; and, third, whether the evidence is sufficient to connect her with the association or its business subsequent to June 1, 1896, or to charge her with liability for its obligation.

Section 3 of the act of June 1, 1896, under which it is claimed that Mrs. Johnson is chargeable, is as follows:

"That any married woman may carry on any trade or business, occupation, or profession by herself, or jointly with others and perform any labor or services on her sole and separate account; and the earnings of any married woman from her trade, business, profession, occupation, labor, or services shall be her sole and separate property, and may be used and invested by her in her own name." [29 Stat. at L. 193, chap. 303.]

As we have heretofore stated, it is our opinion that a joint stock association, organized and carrying on business within the District of Columbia is a partnership, and, being a partnership, we see no good reason why a married woman, if she can enter into a partnership under the act of 1896, cannot hold shares of stock in a joint stock company and make herself liable to the extent that other shareholders are. The section above quoted is broad, and a fair construction of its terms permits a married woman to become a member of a partnership. It states that she "may carry on any trade or business, occupation, or profession by herself, or jointly with others." We do not think the act is to be so limited that a married woman, in order to carry on a trade, business, or occupation in conjunction with others, need necessarily perform labor or render services in order to render her liable, as to third parties, as a partner. It must be borne in mind that there is no statute in the District of Columbia providing for the formation of joint stock companies, as in many of the States, which results in their being very analogous to corporations. A stockholder in an unincorporated joint stock company is a partner, and the liability and duties of one so interested differs very materially from that of a holder of stock in any incorporated company.

The second question is one not free from doubt. The conflict of decisions is very marked. The statutes adopted in England and the various States of this country differ materially in

terms, and, as the decisions are based upon such statutes, we would naturally look for decisions apparently conflicting, although most of them can be reconciled when considered in the light of a special statute which is the foundation of the proceeding. In Massachusetts a husband and wife cannot enter into a partnership contract, although they may do so with others. *Bowker* v. *Bradford,* 140 Mass. 521, 5 N. E. 480. In Michigan the same is true. *Artman* v. *Ferguson,* 73 Mich. 146, 2 L. R. A. 343, 16 Am. St. Rep. 572, 40 N. W. 907. In New York there was a conflict of decisions between the court of appeals and what was known as the second division, the latter being a court composed of judges of the supreme court, delegated to assist the court of appeals in disposing of a large arrearage of business. In *Hendricks* v. *Isaacs,* 117 N. Y. 411, 6 L. R. A. 559, 15 Am. St. Rep. 524, 22 N. E. 1029, the court of appeals, by unanimous decision of its seven judges, held that a married woman at that time was not permitted to make a binding contract with her husband, while the second division, by a vote of four to three, in *Suau* v. *Caffe,* 122 N. Y. 308, 9 L. R. A. 593, 25 N. E. 488, held that a married woman could not be a copartner with her husband. Following these conflicting decisions, the statute relating to married women was amended in 1892 so as to provide that a married woman might contract with her husband or any other person as though she were unmarried, except that the husband and wife were prohibited from contracting that the married relations should be altered or dissolved, or to relieve the husband from his liability to support his wife. N. Y. Stat. 1892, chap. 594. In several of the States married women are allowed to enter into partnerships with their husbands and to make contracts with them. *Hoaglin* v. *Henderson,* 119 Iowa, 720, 61 L. R. A. 756, 97 Am. St. Rep. 335, 94 N. W. 247; *Lane* v. *Bishop,* 65 Vt. 575, 27 Atl. 499. The text writers, however, agree that the weight of authority goes to show that husband and wife may not be memberst of the one partnership. One writer thus states the reasons for the rule:

"The incapacity is not one that concerns the wife only, and

hence it remains notwithstanding such laws, unless, indeed, they expressly declare that the husband and wife may contract with each other generally. The disability is one entirely outside of the common-law doctrine of the *feme covert* not being *sui juris,* and therefore is not removed by statutes intended to merely change the common law in that respect. The point upon which the disability rests is the legal status of husband and wife, who, in contemplation of law, are one person, no individual being able to contract with himself." George, Partn. p. 15.

While the tendency of legislation has been to remove the disabilities of married women, we think, in view of all the authorities, that such statutes removing such disabilities should not be construed so broadly as to permit a partnership between husband and wife, unless the statute expressly gives the husband and wife power to contract with each other generally, we therefore conclude that the appellee Anna M. Johnson could not become a member with her husband of a partnership such as the one in question. Any doubt we might have on the subject we would feel constrained to resolve in her favor, in view of the facts disclosed by the record. Her husband signed her name to the articles of association without, so far as appears, her knowledge or authority; any benefits resulting from the ownership of the two shares of stock were received by him, and she is not shown to have in any way participated in the business of the bank. While these facts, standing by themselves, would not be sufficient to give her immunity in view of the fact that she knew that her husband had transferred the shares to her, and, at his direction, she signed checks, which facts were sufficient to apprise her that, at least, her husband was using her name, yet it must be remembered that the shares were transferred to her prior to the passage of the act of 1896, and at a time while she was admittedly disqualified from becoming a member of such partnership. While it is true that the account shows that on July 16, 1896, a dividend of $10 was placed to her credit, it is not shown that she had any knowledge of this fact, and therefore, it cannot be considered a ratification; neither, under the circumstances, can there be held to be a ratification by rea-

son of her permitting the shares to stand in her name, she not being shown to have had possession of them. All the circumstances tend to intensify the correctness of our conclusion that a married woman should be held to be incompetent to become a member with her husband in such a partnership as the one in question, in the absence of a statutory enactment clearly and positively conferring upon her the power so to do.

On the whole, we conclude that none of the assignment of errors set forth any error which would warrant us in reversing the judgment of the lower court, either as to the appellee John R. Francis, or his coappellee, Anna M. Johnson. It follows that the verdict for the appellees was properly directed, and that the judgment in favor of the appellees should be affirmed, with costs.                                    *Affirmed.*